963 A.2d 1236 (2009)
405 N.J. Super. 235
HACKENSACK CITY, Plaintiff-Appellant,
v.
BERGEN COUNTY, Defendant-Respondent.
County of Bergen, Plaintiff-Appellant,
v.
Hackensack City, Defendant-Respondent.
Nos. A-0507-07T2, A-0511-07T2, A-0512-07T2, A-0929-07T2.
Superior Court of New Jersey, Appellate Division.
Argued December 17, 2008.
Decided February 9, 2009.
*1237 Craig M. Pogosky, Hackensack, argued the cause for appellant Hackensack City in Docket Nos. A-0507-07T2; A-0511-07T2; A-0512-07T2 and as respondent in Docket No. A-0929-07T2 (Zisa & Hitscherich, attorneys; Mr. Pogosky, on the brief).
Gregg A. Padovano, Montvale, argued the cause for respondent County of Bergen in Docket Nos. A-0507-07T2; A-0511-07T2; A-0512-07T2 and as appellant in Docket No. A-0929-07T2 (Beattie Padovano, *1238 LLC, attorneys; Mr. Padovano, of counsel and on the brief).
Before Judges PARRILLO, LIHOTZ, & MESSANO.
The opinion of the court was delivered by
LIHOTZ, J.A.D.
The Tax Court consolidated several tax appeals, as they all related to the same realty, the Arnold Constable Building (the property), 355 Main Street, Hackensack, identified as Block 407, Lot 34 on the Hackensack City tax map. Bergen County (County) owns the property. In 1994, the City of Hackensack (City) removed the property from the rolls of exempted properties and assessed real estate taxes based on the property's value. On September 14, 1994, the Bergen County Board of Taxation (Board) concluded the property was exempt from real estate taxation based upon its governmental use.[1] The City appealed that determination to the Tax Court (Docket No. 01283-94).
Notwithstanding the Board's decision, the City continued to assess the property and send tax bills to the County. The City maintained the property was not used for governmental purposes and was, therefore, not tax exempt. Assessments were issued for 1995 and 1996. On May 20, 1996, the County filed tax appeals from these assessments. The Board dismissed the County's actions as untimely, and the County thereafter appealed to the Tax Court (Docket Nos. 007268-1996 and 007269-1996).
The County also appealed the assessment issued in 1997. The Board concluded the property was exempt from taxation, and the City appealed (Docket No. 005706-1997). The County filed a direct appeal to the Tax Court on the 1998 assessment (Docket No. 00680-1998).
All five matters were consolidated before the Tax Court. The City moved for summary judgment on Docket Nos. 007268-1996 and 007269-1996 because the County's tax appeals for 1995 and 1996 were filed out of time. In an oral determination on January 23, 1998, the Tax Court judge granted summary judgment. The final order was held pending determination of the assessments for the other challenged tax years.
The remaining assessments were the subject of a bench trial held on December 11, 1998 and May 24, 1999. The Tax Court reserved decision and ultimately rendered an oral opinion on July 3, 2007. On the assessments for 1994 and 1997, the Tax Court affirmed the Board's determinations exempting the County's property from taxation and vacated the assessment issued for 1998. On August 17, 2007, final judgments were entered memorializing the Tax Court's decisions on each matter.
The County appealed the dismissal of its appeals for 1995 and 1996 (A-0929-07), and the City appealed the Tax Court's determinations regarding 1994, 1997 and 1998 (A-0507-07, A-0511-07, and A-0512-07). We consolidated the four appeals and review the issues presented by all parties in this opinion.
Following our consideration of the parties' arguments presented on appeal, and in light of the record and the applicable law, we affirm the five Tax Court orders *1239 dated August 17, 2007. We do not decide the merits of the County's request to apply the Freeze Act, N.J.S.A. 54:51A-8, as it is not properly before this court. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973). The County's motion for imposition of the Freeze Act must be presented to the Tax Court.
The facts regarding the County's historic use of the building are undisputed. When the County originally purchased the two-story property in May 1975, it was used as the County's principal administrative office and the basement was used for storage. In 1988, the County's offices relocated to 21 Court Plaza South. The County continued to use the property as a storage facility for surplus county equipment and furniture, records and files, and to store food for distribution by non-profit agencies. In 1989, the City attempted to remove the property from the list of those properties exempt from taxation and issued an assessment. The County successfully defended its public purpose use and the property's exempt status was restored.
In the 1990s, the property functioned as a warehouse for county equipment and furnishings. The parking lot was used by various civic and non-profit organizations. At times, the Bergen County Prosecutor's task force used some of the space. Also, the County stored forfeited vehicles on the parking lot and held an annual auction selling cars and unneeded personalty.
A January 1992 Capital Planning Task Force, authorized by the County Freeholders, authored a report that concluded "there is no County application for which the use of this property is either necessary or superior" and recommended the County sell the property "if a sufficiently attractive offer [wa]s obtained." In 1993, the County engaged a real estate broker to sell the property. In an effort to increase the property's marketability, the County began removing some of the items placed in storage. On December 6, 1995, the County Board of Chosen Freeholders committed to dispose of the property and adopted a resolution to sell the property "by public auction to the highest bidder." The auction bids received on February 13, 1996 were lower than expected and rejected by the County.
In 1996, the County's lease negotiations for 21 Court Plaza South stalled and the County commenced preparation to return to the property's office space. The move was averted when the Court Plaza lease was extended. At this time, the Bergen County Community College (BCCC) commenced utilization of the property's parking lot for its Adult Learning Center program. In 1998, the property was sold to BCCC.
The City's challenges implicate N.J.S.A. 54:4-3.3, which provides, "the property of ... the respective counties,... used for public purposes or for the preservation or exhibit of historical data, records or property shall be exempt from taxation[.]" (Emphasis added). Although the statute does not define "used for public purposes," the statutory language "clearly contemplates that something more than ownership must be established. The word `used' connotes employment or application to an end." County of Bergen v. Borough of Paramus, 79 N.J. 302, 306, 399 A.2d 616 (1979). Thus, the exemption of public property must be based on its use rather than the governmental status of its owner. New Jersey Tpk. Auth. v. Washington Twp., 16 N.J. 38, 44-45, 106 A.2d 4 (1954). "[I]n addition to public ownership there must be public use," County of Bergen, supra, 79 N.J. at 307, 399 A.2d 616, also keeping in mind tax "exemptions in favor of governmental agencies should be liberally construed." Walter Reade, Inc. v. Twp. of *1240 Dennis, 36 N.J. 435, 440, 177 A.2d 752 (1962).
The Supreme Court explained it this way:
The concept of public purpose is a broad one. Generally speaking, it connotes an activity which serves as a benefit to the community as a whole, and which, at the same time is directly related to the functions of government. Moreover, it cannot be static in its implications. To be serviceable it must expand when necessary to encompass changing public needs of a modern dynamic society. Thus it is incapable of exact or perduring definition. In each instance where the test is to be applied the decision must be reached with reference to the object sought to be accomplished and the degree and manner in which the object affects the public welfare.
[City of Newark v. Essex County Bd. of Tax'n, 54 N.J. 171, 187, 254 A.2d 513 (quoting Roe v. Kervick 42 N.J. 191, 207, 199 A.2d 834 (1964)), cert. denied, 396 U.S. 987, 90 S.Ct. 483, 24 L.Ed.2d 452 (1969).]
The City argues the property lost its exempt status when the County ceased its use but for incidental parking and the annual auction. Based on the changing nature of the County's use over the assessment years under examination, we review the specific facts applicable to each tax year.
Crediting the County witnesses, the trial judge described the usage in 1994 stating:
the facility was being used in a general sense as a storage facility by the County.... It was used for storage not only of property that had been left behind when occupancy of the new building was taken up, but also for storage of other property that ... came to be transported there from other county locations....
The court found the use satisfactorily met the statute's requisites for public use and concluded the property was exempt.
Our review of a trial court's factfinding function is limited. 125 Monitor St. v. City of Jersey City, 23 N.J.Tax 9, 13 (App.Div.2005). "[J]udges presiding in the Tax Court have special expertise; for that reason their findings will not be disturbed unless they are plainly arbitrary or there is a lack of substantial credible evidence to support them." Alpine Country Club v. Borough of Demarest, 354 N.J.Super. 387, 390, 807 A.2d 257 (App.Div.2002) (quoting Glenpointe Assocs. v. Twp. of Teaneck, 241 N.J.Super. 37, 46, 574 A.2d 459 (App.Div.), certif. denied, 122 N.J. 391, 585 A.2d 392 (1990)).
We determine the Tax Court's findings regarding the County's public use of the property in 1994 are adequately supported by the credible evidence in the record. Accordingly, the determination the property is exempt from taxation in 1994, as reflected in the Tax Court judgment, will not be disturbed.
For the years 1997 and 1998, the City maintains the County's expressed desire was to dispose of the property such that the property's storage function was de minimus. Furthermore, the City asserts the County's possible future use for administrative offices was uncertain and thus, insufficient as a basis to preserve the exemption.
The County does not dispute its intensity of use for storage lessened in the years 1997 and 1998. This occurred, in part, because the property was "cleaned-up" first, in contemplation of a possible sale and, later, in expectation of resumption of use as county administrative offices if the 21 Court Plaza South lease extension negotiations proved fruitless. The question for examination is whether that change warrants a loss of tax exempt status. Understanding the County retains the burden to establish the tax exempt status of the property, County of Bergen, supra, 79 N.J. *1241 at 310, 399 A.2d 616, we review reported opinions examining the issue.
In Township of Berkeley Heights v. County of Union, 311 N.J.Super. 577, 578, 710 A.2d 1028 (App.Div.1998), the defendant County executed an agreement to sell a county hospital to a private corporation. A decade passed before title closed. Ibid. This court determined "a public entity involved in the sale of property previously devoted to a public use is entitled to a reasonable period of time to consummate a sale during which the tax exempt status of the property shall continue." Id. at 586, 710 A.2d 1028. The sale was hampered by the difficulty in obtaining a new facility, patient relocation and environmental clean up. We concluded under these circumstances, the time, albeit lengthy, was "reasonably required to prepare the site for transfer." Id. at 587, 710 A.2d 1028.
A potential public use qualifying the property for exemption was found when otherwise idle realty was shown to be "`waiting application to public purposes' during a definitive time period" in County of Bergen, supra, 79 N.J. at 308, 399 A.2d 616 (quoting Teaneck Twp. v. Div. of Tax Appeals, 10 N.J.Super. 171, 175, 76 A.2d 823 (App.Div.1950)). The prior exempt character was not lost during a reasonable period necessary to ready the property for public use. Ibid.
We affirmed a Tax Court finding of a continuous exempt use of property owned by a non-profit agency that operated a skilled nursing facility while the facility was expanding and not actually servicing patients in the newly added structure in Job Haines Home for the Aged, Inc. v. Twp. of Bloomfield, 20 N.J. Tax 137, 138-40 (App.Div.2002). See also Paper Mill Playhouse v. Millburn Twp., 7 N.J.Tax 78, 84 (Tax 1984) (previously tax exempt property that discontinues actual use during a discrete reconstruction period retains its exempt status, as it exhibits a "continued exempt character").
However, in Jamouneau v. Div. of Tax Appeals, 2 N.J. 325, 330, 66 A.2d 534 (1949), a city's receipt of rental income from a lease of its property to a private corporation on which it built its factory was determined not to be a public use or to possess the prospect of a future public use. Thus, the realty was not tax exempt.
In the case at bar, during 1997 and 1998, the County continued to use the property for parking, auctions and limited storage. In 1997, the County readied the property to return to function as county office space. When that potential need dissipated, the County prepared the property for transfer to BCCC. Neither the County's modification of the nature of the property's use, nor its adaptation to different possible uses, adversely impacted the character of the use as one for public purposes. We conclude, as did the Tax Court judge, the County's public use of the property was not terminated or abandoned. Therefore, the property should remain tax exempt for the years 1997 and 1998, as set forth in the Tax Court's order.
Turning to the County's appeal of the dismissal of its challenges to the 1994 and 1995 assessments after entry of summary judgment in favor of the City, the County argues the assessments were invalid based upon application of N.J.S.A. 54:51A-8; see also N.J.S.A. 54:3-26. The County maintains the City could not assess the property in 1995 and 1996 once the Board determined it was tax exempt in 1994.[2]
*1242 Additional background information aids the context of this argument. Beginning with the County's purchase of the property in 1975, the property was afforded tax exempt status. The County defeated the City's challenge of exemption in 1989, and the exempt status remained undisturbed thereafter. In making the 1994 assessment, the City again attempted to remove the property from tax exempt status. From 1993 to 1994 and beyond, the County did not change its ownership by executing a contract for sale, or modify the property's general use through the creation of a leasehold. On September 14, 1994, the Board rejected the newly issued assessment and returned the property's assessment to "$0." The City appealed to the Tax Court, ignored the Board's determination of tax exemption, and continued to issue assessments for 1995, 1996, 1997 and 1998.
When the County received a delinquent tax notice relating to the 1995 assessment, it corresponded with the City on March 29, 1995, reminding the City tax collector of the Board's determination that the property was tax exempt. The record offers no explanation for the significant delay occasioned from the filing of the 1994 appeal to the Tax Court and the entry of its decision in July 2007. We query whether a more timely disposition would have averted this challenge. Nevertheless, the County did not file an appeal of the 1995 assessment. Only after the County realized an assessment was again issued for 1996 did it file appeals with the Board for 1995 and 1996, on or about May 17, 1996. The appeals were dismissed for late filing. See N.J.S.A. 54:3-21 (stating the April 1 filing deadline for tax appeals).[3]
Our review suggests two independent issues are presented by the County's appeal: first, whether the untimely appeals were properly dismissed by the Board, as affirmed by the Tax Court; and, second, notwithstanding the dismissal of the appeals filed out of time, whether the Freeze Act applies to bar the assessments imposed by the City in 1995 and 1996.
As to the first question, we conclude the untimely appeals were properly dismissed. We reject the County's challenge to the adequacy of the Chapter 75 notice of assessment and determine the record substantiates the County received notice of the assessments in 1995 and 1996. N.J.S.A. 54:3-21 sets forth the process for a taxpayer to appeal a tax assessment. It is well established that "the courts of this State have traditionally required that taxpayers file timely applications as well as appeals and that they are barred from relief if they fail to do so." Horrobin v. Dir., Div. of Tax'n, 172 N.J.Super. 173, 1 N.J.Tax 213, 216, 411 A.2d 479 (Tax 1979); see also F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 425, 495 A.2d 1313 (1985) (taxing districts are required to comply with the time prescriptions for filing tax appeals). "The basis for these decisions has been that statutory tax deadlines are `substantive' or `jurisdictional' statutes of limitation, and that the courts are without authority to extend such deadlines established by the Legislature." Horrobin, supra, 172 N.J.Super. 173, 1 N.J.Tax at 216, 411 A.2d 479.
The County was remiss in not filing timely appeals for 1995 and 1996, which is considered a fatal defect to the Board's review. Mayfair Holding Corp. v. Twp. of *1243 N. Bergen, 4 N.J.Tax 38, 41 (Tax 1982). We cannot quarrel with the Tax Court's grant of summary judgment on that basis.
In any event, a timely appeal to the Board or the dismissal of an untimely appeal has no effect on the application of the Freeze Act, which is the second issue raised by the County. Boys' Club of Clifton, Inc. v. Jefferson, 72 N.J. 389, 405, 371 A.2d 22 (1977); Grandal Enters., Inc. v. Borough of Keansburg, 292 N.J.Super. 529, 537, 679 A.2d 193 (App.Div.1996). "It is not necessary for a taxpayer to file a tax appeal to obtain the benefit of the Freeze Act." Grandal Enters., supra, 292 N.J.Super. at 537, 679 A.2d 193. The statute is self-executing. Ibid.
When the Tax Court examined the application of the Freeze Act, it concluded the County's request was premature because no final determination was issued regarding the challenged 1994 assessment. The Tax Court also noted the Freeze Act applied "only to issues of valuation not to questions regarding exemption status." The first basis of denial was procedural, while the second addressed a legal determination.
The municipal assessor has a duty to obtain a statement from a property owner concerning the claimed exempt status of the property every three years. N.J.S.A. 54:4-4.4. Notwithstanding this statute, each annual assessment is separate from the assessment for the previous or subsequent year. Aetna Life Ins. Co. v. City of Newark, 10 N.J. 99, 103, 89 A.2d 385 (1952); Hackensack Water Co. v. Div. of Tax Appeals, 2 N.J. 157, 162, 65 A.2d 828 (1949); see also Blair Acad. v. Blairstown, 95 N.J.Super. 583, 593, 232 A.2d 178 (App. Div.) (determination of tax exemption as to one year did not become conclusive and binding as to subsequent year on the issue of tax exemption), certif. denied, 50 N.J. 293, 234 A.2d 401 (1967). Moreover,
while a property might be exempt in one year a change in its use could result in a loss of the exemption. Accordingly, a declaratory judgment that a property is exempt could not automatically be applied prospectively as the use of the property would have to be monitored to ensure there was no material change forfeiting the exemption. Therefore, there should be separate actions for each year for which a claim of exemption is disputed.
[County of Essex v. E. Orange, 214 N.J.Super. 568, 576, 520 A.2d 788 (App. Div.), certif. denied, 107 N.J. 120, 526 A.2d 189 (1987).]
One exception to annual modifications of assessments is found in the Freeze Act, which "provides that after a successful appeal to the Tax Court, an assessment shall not be changed for the year in question and the two succeeding years after the Tax Court has rendered a final judgment." Tamburelli Prop. Ass'n v. Borough of Cresskill, 308 N.J.Super. 326, 336, 705 A.2d 1270 (App.Div.1998) (citing N.J.S.A. 54:51A-8). A similar statute, N.J.S.A. 54:3-26, provides relief for final judgments rendered by a county board of taxation.
A Tax Court judgment, not subject to further appeal, "shall be conclusive and binding upon the municipal assessor and the taxing district, parties to the proceeding, for the assessment year and for the two assessment years succeeding the assessment year, covered by the judgment, except as to changes in value of the property occurring after the assessment date." N.J.S.A. 54:51A-8. See also N.J.S.A. 54:3-26 (application to final judgments entered by a county board of taxation). "`The evil which the `freeze' statute sought to remedy was repeated yearly increases in the assessed value of property, not related to or justified by any changes increasing its market value, and resulting *1244 in harassment of the taxpayer, subjecting him to the trouble and expense of annual appeals to the county tax board.'" South Plainfield Borough v. Kentile Floors, Inc., 92 N.J. 483, 487, 457 A.2d 450 (1983) (quoting Newark v. Fischer, 8 N.J. 191, 199-200, 84 A.2d 547 (1951)). Therefore, once a final judgment is entered by the Tax Court (or a county board of taxation), the statute "freezes" the municipal property assessment in the disputed case, by operation of law.
The question of whether the Freeze Act applies to tax exempt status claims was first mentioned in Fischer, supra, 8 N.J. at 198, 84 A.2d 547. Fischer purchased realty owned by a public entity under a five-year executory sales contract. Id. at 193, 84 A.2d 547. Fischer was an existing tenant in the building and remained in possession. Ibid. The plaintiff began assessing the property because of its private use. Id. at 194, 84 A.2d 547. The assessments were set aside by the Division of Tax Appeals, the predecessor to the Tax Court, because Fischer was a mere vendee, not the owner. Id. at 195, 84 A.2d 547. One of the questions examined by the Court and relevant to the matter at hand, was whether the Freeze Act prevented the City from issuing new assessments for two years after a determination was made that the property was tax exempt. Id. at 199-200, 84 A.2d 547. The City maintained the Freeze Act applies only to the amount of the assessed value and not to the tax exempt status of the property, which was now subject to a non-public use. Ibid.
The Supreme Court stated the Freeze Act addressed the assessed valuation of property as it "was intended to govern the frequency of appeals as to disputed amounts of assessments and not the tax exempt status of real property...." Id. at 199, 84 A.2d 547. Further, "[i]t has no application, either by its phraseology or its obvious intent, to determinations of the tax exempt status." Id. at 200, 84 A.2d 547.
In Boys' Club of Clifton, supra, 72 N.J. at 405, 371 A.2d 22, the Court observed that the Freeze Act makes binding a final judgment with respect to valuation, and no similar provisions regarding preclusive effect are found in the statutes involving tax exempt status. Further, in County of Bergen, supra, 79 N.J. at 305, 399 A.2d 616, the Court made clear that in the first instance, "a taxpayer seeking an exemption could obtain a review only by filing a conventional tax appeal[.]" County of Essex, supra, 214 N.J.Super. at 575, 520 A.2d 788. The plaintiff acquired the land and sought an exemption, which was denied by the Borough because the County had no plans "`to do anything' with the land and... the property at some indefinite point in time in the future had a potential public use." County of Bergen, supra, 79 N.J. at 304-05, 399 A.2d 616.
In reviewing these opinions, we examined the application of the Freeze Act against "attempts to rely on judgments issued by the Tax Court holding a piece of property tax exempt by taxpayers who for whatever reason are no longer eligible for the exemption." Grandal Enters., supra, 292 N.J.Super. at 539, 679 A.2d 193. None of the reported decisions examine a request such as the one presented in this matter.
Here, the County owns property, which was denoted as tax exempt from 1975 to 1994. The City decided to challenge the sufficiency of the property's public purposes. The County successfully repelled the City's 1994 assessment, seeking to eliminate its exempt status before both the Board and the Tax Court. We now affirm that determination. In the event this remains the final word, we cannot conclusively say application of the Freeze Act is foreclosed.
*1245 We remain mindful of the fundamental purpose of the Freeze Act. The Freeze Act is designed to protect the taxpayer and grant repose to a final judgment of the Tax Court for a period of two years, preventing arbitrary actions of the taxing authority. Borough of Hasbrouck Heights v. Div. of Tax Appeals, 41 N.J. 492, 499, 197 A.2d 553 (1964). In that light, the statute prevents repetitive litigation regarding assessments "`not related to or justified by any changes increasing [a property's] market value, and resulting in harassment of the taxpayer, subjecting him to the trouble and expense of annual appeals to the county tax board.'" South Plainfield Borough, supra, 92 N.J. at 487, 457 A.2d 450 (quoting Fischer, supra, 8 N.J. 191, 199-200, 84 A.2d 547).
Here, the Tax Court examined whether the County's use of the property was sufficient to satisfy N.J.S.A. 54:4-3.3 and warrant a finding that the property was used for public purposes. The assessment was fixed at "$0" based on the determination that no change occurred. That issue was adjudicated on the merits and the facts presented demonstrated the County utilized the building in the same way in 1994, 1997 and 1998. Testimony regarding its use in 1995 and 1996 was only presented, generally. The County contends here, unlike Fischer, Blair Academy, and County of Bergen, the property's use continued uninterrupted and unchanged. The City challenges whether the testimony was conclusive on that issue.
While it is desirable this litigation be brought to an end with definiteness and not be further prolonged, this issue is not properly before this court. The Tax Court correctly identified the County must receive a final judgment prior to moving for application of the Freeze Act. N.J.S.A. 54:51A-8. Once a final judgment is rendered, a taxpayer must file a supplementary motion to the Tax Court in the first instance, pursuant to Rule 8:7(d),[4] to invoke the Freeze Act. Grandal Enters., supra, 292 N.J.Super. at 538, 679 A.2d 193. That potential relief remains available to the County. We leave for the Tax Court the examination of whether the judgment, once final, has fixed the amount of the assessment such that the Freeze Act applies.
The final judgments of the Tax Court on all appeals are affirmed.
NOTES
[1] All real property is assessed annually for qualification of exemption and valuation purposes as of October 1 of the pre-tax year. N.J.S.A. 54:4-23. City of Camden v. Camden Masonic Ass'n, 9 N.J.Tax 331, 339 (Tax 1987), aff'd, 11 N.J.Tax 88 (App.Div.1989). In the remainder of this opinion, we reference only a year when discussing each assessment. The year corresponds to the tax year commencing January 1, not the year the assessment was issued.
[2] The record does not contain the Tax Court pleadings. The judge's opinion noted, however, that in addition to challenging the denial of tax exempt status, the County contested the assessment amount and preserved the right to contest the City's valuation. This issue was not presented at trial before the Tax Court.
[3] The County's arguments suggest it should have been granted an extension pursuant to either N.J.S.A. 54:3-21.4 or N.J.S.A. 54:3-21.5, both of which are now repealed. We conclude these arguments are without merit, as the period of extension would have been thirty days. Centorino v. Tewksbury Twp., 18 N.J.Tax 303, 308 (Tax 1999), rev'd on other grounds, 347 N.J.Super. 256, 789 A.2d 655 (App.Div.2001), certif. denied, 172 N.J. 175, 796 A.2d 892 (2002).
[4] The Rule states:

(d) Freeze Act. The Freeze Act (N.J.S.A. 54:51A-8) may be invoked at the option of the taxpayer on motion for supplementary relief to the Tax Court under the caption of the Tax Court judgment for the base year to which the Freeze Act application is sought.
[R. 8:7(d).]