974 A.2d 443 (2009)
408 N.J. Super. 213
McKESSON WATER PRODUCTS COMPANY, Plaintiff-Respondent,
v.
DIRECTOR, DIVISION OF TAXATION, Defendant-Appellant.
Docket No. A-5423-06T3
Superior Court of New Jersey, Appellate Division.
Argued January 27, 2009.
Decided July 16, 2009.
Marlene G. Brown, Deputy Attorney General, argued the cause for appellant (Anne Milgram, Attorney General, attorney; Patrick DeAlmeida, Assistant Attorney General, of counsel; Ms. Brown, on the brief).
David Shipley, argued the cause for respondent (McCarter & English, attorneys; Mr. Shipley, of counsel; Mr. Shipley, Michael A. Guariglia, Philadelphia, PA and Open Weaver Banks, Newark, on the brief).
Before Judges WINKELSTEIN, FUENTES and CHAMBERS.
The opinion of the court was delivered by
FUENTES, J.A.D.
In this appeal, we are required to decide whether the Tax Court correctly construed the term "nonoperational income," as used in N.J.S.A. 54:10A-6.1(a), to determine whether plaintiff's gain from a deemed asset sale under Internal Revenue Code § 338(h)(10) is subject to the *444 New Jersey Corporation Business Tax (CBT). As a corollary to this issue, the Director of Taxation also asks us to remand this matter for the Tax Court to consider the applicability of the "unitary business" principle, in light of the United States Supreme Court's decision in Mead-Westvaco Corp. v. Illinois Department of Revenue, 553 U.S. ___, 128 S.Ct. 1498, 170 L.Ed.2d 404 (2008).
After carefully reviewing the record developed before the Tax Court, and considering prevailing legal standards, we affirm Judge Kuskin's well-reasoned opinion, as reported in McKesson Water Products Co., v. Director, Division of Taxation, 23 N.J.Tax 449 (2007). Because the Tax Court decided this case on cross-motions for summary judgment, we will rely on the core material facts that informed the Tax Court's decision.[1]

I
At all times relevant to this case, McKesson Water Products Company (McKesson-Water) was a Delaware corporation with its principal place of business located in the State of California. McKesson-Water was a wholly-owned subsidiary of McKesson Corporation (McKesson-Parent); McKesson-Water was in the business of processing and selling bottled drinking water across the country by direct delivery and at retail establishments. McKesson-Parent was a Delaware Corporation with its commercial domicile in California. It sold and distributed pharmaceuticals and other healthcare-related products.
On January 10, 2000, McKesson-Parent entered into a Stock Purchase Agreement with Danone International Brands, Inc. and Groupe Danone, S.A. (Danone), under which McKesson-Parent agreed to sell all of its stock in McKesson-Water to Danone. The sale took place on February 29, 2000. The parties to the Stock Purchase Agreement made an election under I.R.C. 338(h)(10). The Tax Court gave the following explanation of the tax benefits derived from such an election.
A Section 338(h)(10) election permits a sale of stock to be treated, for federal income tax purposes, as a sale of assets by the entity whose stock is being sold (the "target corporation") to a hypothetical new corporation of the same name. The target corporation is deemed to have received a purchase price equal to the amount that was in fact paid by the purchaser to the parent corporation as consideration for the purchase of the target corporation's stock. The target corporation is then deemed to have made a liquidating distribution to its shareholder(s). As a result of the deemed sale, the assets of the target corporation receive a stepped-up basis for purposes of depreciation under the Internal Revenue Code. See Treas. Reg. 1.338-1(a) and (d) (describing a deemed sale of assets transaction).
[McKesson, supra, 23 N.J.Tax at 451.]
Thus, McKesson-Parent's sale of McKesson-Water's stock to Danone was treated, for federal income tax purposes, as if McKesson-Water had sold its assets to a new company of the same name. Under this fictional sale,
[t]he new company was deemed to have paid to [McKesson-Water], as the purchase *445 price of the assets, an amount equal to the purchase price Danone paid [McKesson-Parent] for [McKesson-Water's] stock. [McKesson-Water] was then deemed to have liquidated and to have distributed to [McKesson-Parent] the proceeds of the hypothetical sale of its assets.
[Id. at 452.]
McKesson-Parent filed a consolidated federal income tax return for the period April 1, 1999, through March 31, 2000, that recognized no gain or loss from the sale of McKesson-Water stock. McKesson-Water filed a New Jersey CBT return for the period, between April 1, 1999, and February 29, 2000, reporting a tax due in the amount of $244,990. William J. Peeters, the Director of Tax Audits for McKesson-Parent, submitted a detailed affidavit explaining the accounting methods he used to determine the CBT due. Based on this analysis, McKesson-Water sought to offset the $244,990 tax due, and $8,084 interest due, against its estimated payments of $2,065,100, resulting in a refund request of $1,812,026.
On May 7, 2001, the Division issued a determination letter notifying McKesson-Water that it increased McKesson-Water's tax due by $807,092, or from $244,990 to $1,052,082, resulting in a reduction in McKesson's refund to $1,013,018. Acting on McKesson-Water's protest, the Division's Conference and Appeals Branch held an administrative conference on August 6, 2002. On October 3, 2002, the Division issued a Conference Report affirming the increase of McKesson-Water's 1999 CBT liability. A Final Determination affirming the Division's denial of the $799,008 refund claim was rendered on October 9, 2002.
The matter next came before the Tax Court. Acting on the parties' cross-motions for summary judgment, Judge Kuskin rendered an opinion from the bench granting summary judgment in favor of McKesson-Water and denying the Division's summary judgment motion. The oral decision was later memorialized in the published opinion under review here.

II
The Tax Court began its analysis by noting that elections to treat the sale of stock as an asset sale are recognized pursuant to I.R.C. § 338(h)(10) for purposes of the New Jersey CBT under N.J.A.C. 18:7-5.8. McKesson, supra, 23 N.J.Tax at 452. The Tax Court framed the question thusly: can McKesson-Water allocate its gain from its deemed assets sale to New Jersey for CBT purposes? Ibid.
After a detailed discussion and review of the legislative history and public policy implications of N.J.S.A. 54:10A-6.1a, the court determined that McKesson-Water's deemed asset sale and liquidation did not constitute "operational income" as defined in N.J.S.A. 54:10A-6.1a. Consequently, the gain derived was "not allocable to New Jersey and must be assigned to California, the location of [McKesson-Water's] principal place of business." Id. at 465.
N.J.S.A. 54:10A-6.1a defines the terms "operational income" and by way of exclusion, "nonoperational income," as follows:
"Operational income" subject to allocation to New Jersey means income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations and includes investment income serving an operational function. Income that a taxpayer demonstrates with clear and convincing evidence is not operational income is classified as nonoperational income, and the nonoperational income of taxpayers is not subject *446 to allocation but shall be specifically assigned; provided, that 100% of the nonoperational income of a taxpayer that has its principal place from which the trade or business of the taxpayer is directed or managed in this State shall be specifically assigned to this State to the extent permitted under the Constitution and statutes of the United States.
Here, the Tax Court noted that the definitions of "operational" and "nonoperational" income "appear to have been derived from the Uniform Division of Income for Tax Purposes Act, 7 U.L.A. 331 (1985 & Supp. 1997) ("UDITPA"), adopted (with occasional modifications) in many states, but not in New Jersey." (citations omitted.) McKesson, supra, 23 N.J. Tax at 454. By way of example, the court noted that the UDITPA defined "business income" as
[I]ncome arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations.
[Ibid.]
With these similarities between our statute and UDITPA in mind, the Tax Court reviewed cases from sister states that have addressed the distinction between an actual asset sale and a "deemed" asset sale under I.R.C. § 338(h)(10). With the exception of California, the court consistently found that gains derived from deemed asset sales are considered "nonbusiness" income.[2]Id. at 457.
With this analysis as backdrop, the Tax Court reached the following conclusion with respect to McKesson-Water's deemed asset sale:
Under the judicial interpretations discussed above, the deemed sale of assets by, and liquidation of, Water Products did not constitute the acquisition, management and disposition of property as an integral part of the taxpayer's regular trade or business operations. The result of the transaction, under the Section 338(h)(10) election made by Parent, as seller, and Danone as buyer, was a cessation of Water Products' business with a complete liquidation and distribution to Parent of the proceeds of the sale of Water Products' assets. This was an extraordinary event in the company's history, resulting in the deemed termination of its operations and existence. The gain resulting from the sale was neither operational income nor investment income serving an operational function because no operational function of Water Products continued after the deemed sale of assets and liquidation, and Parent did not invest the proceeds of the sale in a business similar to that conducted by Water Products.
[Id. at 465.]

III
On appeal, The Director argues that the Tax Court erred when it relied on the *447 UDITPA definitions of "business" and "non-business" income to construe the terms "operational" and "non-operational" income in N.J.S.A. 54:10A-6.1(a), in the context of a § 338(h)(10) sale. As a result, the Director argues that the Tax Court incorrectly found that the income derived by McKesson-Water from its § 338(h)(10) deemed asset sale is not allocable to New Jersey, and not subject to taxation under the CBT.
In response, McKesson-Water argues that based on a plain reading of N.J.S.A. 54:10A-6.1(a), the Tax Court correctly construed the term "operational income" to mean income from property "if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations...." Ibid. (Emphasis added). That is, according to McKesson-Water, and as found by the Tax Court, to constitute "operational income," each of the following activities must be integral parts of the taxpayer's regular trade or business operations: (1) the acquisition of the property; (2) the management of the property; and (3) the disposition of the property.
After the Tax Court issued its opinion in this case, the United States Supreme Court decided MeadWestvaco Corp. v. Illinois Department of Revenue, supra, 553 U.S. ___, 128 S.Ct. 1498, 170 L.Ed.2d 404 (2008). In MeadWestvaco, the Court reversed the decision of the appellate court of Illinois that the income derived by Mead from the sale of its Lexis division was apportionable to Illinois under the unitary business principle. Id. at ___, 128 S.Ct. at 1502, 170 L.Ed.2d at 409. Here, as part of its summary judgment motion before the Tax Court, McKesson-Water asked the court to decide whether New Jersey was prohibited from taxing the gain from its § 338(h)(10) deemed asset sale under the constitutional unitary business principle. Having found in McKesson-Water's favor on statutory grounds, the Tax Court declined to reach this constitutional question.
The Director argues that a remand is necessary for the Tax Court to consider the argument raised by Water-McKesson concerning the applicability of the unitary business principle. McKesson-Water responds by noting that the unitary business principle was a fall-back argument, raised before the Tax Court only as an alternative basis for the relief McKesson-Water was seeking. Thus, because the Tax Court found in its favor on statutory grounds, the unitary business principle argument is rendered moot.
We agree with McKesson-Water's position on this issue, and therefore deny the Director's request for remand. The unitary business principle is rooted in the constitutional limitations imposed by the Commerce Clause, and the protections afforded under the Due Process Clause of the Constitution. MeadWestvaco, supra, 553 U.S. at ___, 128 S.Ct. at 1505, 170 L.Ed.2d at 412. These two constitutional provisions "impose distinct but parallel limitations on a State's power to tax out-of-state activities." Ibid. Because the central issue before us here can be thoroughly addressed and resolved on purely statutory grounds, we discern no legal basis to reach the constitutional issues implicated in the unitary business principle. State ex rel. J.A., 195 N.J. 324, 354, 949 A.2d 790 (2008).
Returning to the central statutory issue at hand, we are satisfied that that gain derived by the deemed asset sale of McKesson-Water under I.R.C. § 338(h)(10) is not subject to CBT because it does not constitute "operational income" as defined in N.J.S.A. 54:10A-6.1(a). We reach this conclusion substantially for the reasons expressed by Judge Kuskin in *448 McKesson Water Products Co., v. Director, Division of Taxation, supra, 23 N.J.Tax 449 (2007).
Affirmed.
NOTES
[1] Although the Director seeks a remand for the Tax Court to consider the unitary business principle, both sides concede that the interpretation of N.J.S.A. 54:10A-6.1(a) is ripe for adjudication as a matter of law. Thus, because our review here is purely a legal one, we do not owe the special deference accorded to Tax Court judges in their role as fact-finders. Cf. Hackensack City v. Bergen County, 405 N.J.Super. 235, 243, 963 A.2d 1236 (App.Div.2009).
[2] The court reviewed the following cases: Texaco-Cities Serv. Pipeline Co. v. McGaw, 182 Ill.2d 262, 230 Ill.Dec. 991, 695 N.E.2d 481 (1998); Blessing/White, Inc. v. Zehnder, 329 Ill.App.3d 714, 263 Ill.Dec. 572, 768 N.E.2d 332, leave to appeal denied, 201 Ill.2d 560, 271 Ill.Dec. 922, 786 N.E.2d 180 (2002); The May Dep't Stores Co. v. Ind. Dep't of State Revenue, 749 N.E.2d 651 (Ind. Tax Ct.2001); McVean & Barlow, Inc. v. N.M. Bureau of Revenue, 88 N.M. 521, 543 P.2d 489 (Ct.App.), cert. denied, 89 N.M. 6, 546 P.2d 71 (1975); Laurel Pipe Line Co. v. Commonwealth, 537 Pa. 205, 642 A.2d 472 (1994); Kemppel v. Zaino, 91 Ohio St.3d 420, 746 N.E.2d 1073 (2001); Lenox, Inc. v. Tolson, 353 N.C. 659, 548 S.E.2d 513 (2001).