**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3 and R. 8:9-6.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2730-20

OCEAN GROVE CAMP
MEETING ASSOCIATION
OF THE UNITED METHODIST
CHURCH,

      Plaintiff-Respondent,

v.

TOWNSHIP OF NEPTUNE,

      Defendant-Appellant.

_____

> Approved for Publication
> In the New Jersey
> Tax Court Reports

Argued October 18, 2022 – Decided December 20, 2022

Before Judges Messano, Gilson and Rose.

On appeal from the Tax Court of New Jersey, Docket No. 13693-2017, whose opinion is reported at 32 N.J. Tax 320 (Tax 2021).

Gene J. Anthony, argued the cause for appellant.

James M. McGovern, Jr., argued the cause for respondent (Davison Eastman Muñoz Paone, PA, attorneys; James M. McGovern, Jr., of counsel; Katherine B. Galdieri, on the brief).

PER CURIAM

Defendant Township of Neptune (defendant or Township) appeals from an April 19, 2021 Tax Court order granting plaintiff Ocean Grove Camp Meeting Association of the United Methodist Church (plaintiff or Association) tax-exempt status for certain property for the tax year 2018, on cross-motions for summary judgment. On appeal, the Township maintains the Association failed to satisfy the three-prong test for tax-exempt status under N.J.S.A. 54:4-3.6, enunciated by our Supreme Court in Paper Mill Playhouse v. Township of Millburn, 95 N.J. 503 (1984). For the first time on appeal, the Township contends the matter was not ripe for summary judgment. Unpersuaded, we affirm.

## I.

We commence our review with the governing legal principles to give context to the Tax Court judge's decision. "'In New Jersey, all real property is subject to local property taxation . . . unless its use has been exempted' by legislation." Christian Mission John 3:16 v. Passaic City, 243 N.J. 175, 185 (2020) (quoting Hunterdon Med. Ctr. v. Township of Readington, 195 N.J. 549, 553 (2008)); see also N.J.S.A. 54:4-1. Because "[s]tatutes granting exemption from taxation represent a departure . . . they are most strongly construed against

those claiming exemption," thus placing the burden of proof on the claimant. Princeton Univ. Press v. Borough of Princeton, 35 N.J. 209, 214 (1961).

N.J.S.A. 54:4-3.6 exempts certain property that "does not exceed five acres" from taxation. Pertinent to this appeal, that property includes:

> [A]ll buildings actually used in the work of associations and corporations <u>organized exclusively for the moral and mental improvement of men, women and children</u>, provided that if any portion of a building used for that purpose is leased to profit-making organizations or is otherwise used for purposes which are not themselves exempt from taxation, that portion shall be subject to taxation and the remaining portion only shall be exempt [(mental and moral improvement clause); and] all buildings actually used in the work of associations and corporations <u>organized exclusively for religious purposes, including religious worship, or charitable purposes</u>, provided that if any portion of a building used for that purpose is leased to a profit-making organization or is otherwise used for purposes which are not themselves exempt from taxation, that portion shall be subject to taxation and the remaining portion shall be exempt from taxation, and provided further that if any portion of a building is used for a different exempt use by an exempt entity, that portion shall also be exempt from taxation [(religious or charitable purposes clause)].
>
> [Ibid. (emphasis added).]

These exemptions are provided by the State as a "quid pro quo in recognition 'of the contribution of the exempt facility to the public good.'" Christian Mission John 3:16, 243 N.J. at 185 (quoting Roman Catholic Diocese

of Newark v. Borough of Ho-Ho-Kus, 42 N.J. 556, 566 (1964)).  That is so even if such use "is available to or most immediately benefits only some narrow segment of the general public."  Ibid. (citing Girls Friendly Soc'y of P.A. v. Cape May City, 26 N.J. Tax 549, 567 (Tax 2012)).

Our Supreme Court has explained N.J.S.A. 54:4-3.6 "requires three criteria for exemption, (1) [the owner of the property] must be organized exclusively for the [exempt purpose]; (2) its property must be actually and exclusively used for the tax-exempt purpose; and (3) its operation and use of its property must not be conducted for profit."  Hunterdon Med. Ctr. v. Readington Township, 195 N.J. 549, 561 (2008) (quoting Paper Mill Playhouse, 95 N.J. at 506) (alterations in original).  Notably, in 1985, the Legislature eliminated the exclusivity requirement under the second prong.  See L. 1985, c. 395, § 1; see also S. Revenue, Fin. & Approps. Comm. Statement to A. 2246 (May 6, 1985) (noting change); see also Christian Mission John 3:16, 243 N.J. at 186, n.3.  "[A]pplication of the statutory test necessarily depends on the facts of each case."  Int'l Sch. Servs., Inc. v. West Windsor Township, 207 N.J. 3, 22 (2011).

## II.

Against that legal backdrop, we consider the record evidence.  "Because the Tax Court decided this case on cross-motions for summary judgment, we

will rely on the core material facts that informed the Tax Court's decision." McKesson Water Prods. Co. v. Dir., Div. of Taxation, 408 N.J. Super. 213, 215 (App. Div. 2009). That record includes the depositions of, and certifications by, the parties' employees and representatives, and voluminous documents pertaining to the Association's activities and incorporation.

Plaintiff's presence in the Ocean Grove section of the Township is longstanding. In 1869, a group of Methodist ministers founded the organization and established seasonal camp meeting grounds on 260 acres of land in Ocean Grove. In 1870, the Legislature granted plaintiff a charter to create, "for the members and friends of the Methodist Episcopal Church a proper, convenient and desirable permanent camp meeting ground and [C]hristian seaside resort." Plaintiff's mission statement similarly states: "The object of this Association shall be to provide and maintain for the members and friends of the United Methodist Church[1] a proper, convenient, and desirable permanent camp[] meeting ground and Christian seaside resort."

---

[1] In 1968, legislation was enacted authorizing the Methodist Episcopal Church, among certain other churches and religious corporations, to assume the name, "The United Methodist Church," without affecting their powers and rights. See N.J.S.A. 16:10A-1; L. 1968, c. 231.

The Association "is an independent organization; it is not a congregation of the United Methodist Church and does not report to the Bishop of the United Methodist Church." Since 1940, the Association has been organized under Section 501(c) of the Internal Revenue Code as a non-profit organization. While staff receive compensation, all officers and trustees serve as volunteers; they receive no "salary, compensation or any kind of financial benefit for [their] service."

Except for the public streets, the Association owns all property within Ocean Grove, including the Great Auditorium where entertainment events are held. At issue in this appeal is property identified on the Township's tax map as Lot 9, Block 111, located at 15 Pilgrim Pathway, and commonly known as Grove Hall (the property or Grove Hall).

The Township's tax assessor, Bernard Haney, who had granted plaintiff's religious purposes exemption for Grove Hall for tax years 1999 through 2017, denied the exemption for tax year 2018. In its November 13, 2017 notice of disallowance, defendant claimed Grove Hall was not "actually used for a permitted or qualifying use pursuant to [N.J.S.A. 54:4-3.6]." The notice further advised the Association failed to submit Grove Hall's 2017 weekly schedules

 A-2730-20

and the names of the facilitators for its "worship," "bible services," and "retreats for guests" (collectively, weekly schedules).

On December 27, 2017, plaintiff filed a direct complaint in Tax Court, contesting the Township's $1.24 million property tax assessment for the 2018 tax year. Asserting it utilized Grove Hall "in union with other contiguous property as a religious retreat and conference center for exempt religious purposes pursuant to N.J.S.A. 54:4-3.6," plaintiff claimed the Township improperly analyzed the property's "quantum of religious use."

On January 2, 2018, defendant filed an answer and counterclaim maintaining its position that Grove Hall was not entitled to a tax exemption under N.J.S.A. 54:4-3.6. At the close of discovery, the Township moved for summary judgment, primarily arguing plaintiff utilized Grove Hall as a bed and breakfast inn, which permitted individuals and secular groups to stay overnight for a fee that included breakfast and beach badges. The Township claimed Grove Hall should not be tax exempt because plaintiff: "(1) rarely organized structural religious programs or conducted retreats at the [property], (2) did not have a vetting/review process for its guests' eligibility to stay, and (3) [wa]s not formally affiliated with any religious order or organization." In its cross-motion seeking restoration of Grove Hall's 2018 tax-exempt status, the Association

7

argued "it [wa]s not required to provide worship service or maintain minimum level of religious activities" at Grove Hall to qualify for the exemption.

During his deposition, Haney acknowledged Grove Hall had been granted tax-exempt status even before 1999, when he began his employment as the Township's assessor. Although he had approved the property's tax-exempt status for tax years 2014 through 2017, Haney and the deputy assessor discussed "whether [he was] going to extend the tax exemption for Grove Hall going forward from 2017."

Haney requested Grove Hall's weekly schedules to determine whether the property met his understanding of a retreat. According to Haney:

> A retreat center is a place where you go; there is a facilitator who runs a retreat for a day, for a weekend, for a week. It is a structured event that has a schedule, that has a list of speakers, . . . that has a defined schedule. . . . [A] retreat has a structure. It cannot be a place to sleep and have breakfast. We call those bed and breakfasts.

Haney developed this definition pursuant to his experience as the assessor for the Borough of Harvey Cedars, which had two retreat houses, and as a participant of a retreat in Morristown – all of which "operated very, very similarly." Haney opined Grove Hall "operat[ed] as a bed and breakfast to support [plaintiff's] programs at the Great Auditorium." Because Haney did not

receive the weekly schedules when requested,[2] he concluded Grove Hall failed to demonstrate it operated as a structured retreat center. Based on his training, Haney employed the "mantra, . . . when in doubt, deny."

Prior and present employees of the Association testified at deposition about the Methodist nature of plaintiff's mission and how its properties, including Grove Hall, furthered that mission. For example, the Association's present director of administration and finance, Karen Beachy testified that plaintiff's mission was grounded in "spiritual birth, growth, and renewal." While "the vast majority of requests" to stay at Grove Hall were "church groups," Beachy acknowledged there had been requests from secular groups, such as yoga retreats that did not "fit." But Beach further stated: "[T]he reality is we don't advertise anywhere outside of church circles, and it's primarily word of mouth. So, we don't get calls that are not connected at all really."

Beachy also testified that the Association requests "agendas ahead of time," but the groups "can do whatever they want" provided they gave advance notice of their activities. "Christian retreats can look like a lot of different things. . . . [I]t can be a wholesome week for the family with devotions in the

---

[2] According to the Township's merits brief, the weekly schedules were not provided "until discovery was demanded through litigation."

morning together, or it can be . . . intense, where every minute of the day is kind of planned."  When deposed in July 2020, Lynda Kusik confirmed that during her two-year tenure as Grove Hall's manager, the property did not allow individuals; "only faith-based retreats."

Deposed in January 2020, plaintiff's former finance director, Bobbi Kehoe, testified she was employed by the Association from 1999 until she was "let . . . go" in 2019.  Kehoe testified the Association interprets its mission statement "in a very broad fashion" because almost any type of "worship, education, cultural, and recreational activities . . . will fit into [those categories]."

Kehoe stated, during an unspecified time frame, Grove Hall was "open for individual night stays."  She acknowledged these individuals "just wanted to stay someplace in Ocean Grove," and were "[n]ot affiliated with the Methodist Church."  She acknowledged in that sense the property's use was "[n]o different than staying at a bed and breakfast or a hotel."  But Kehoe also testified that Grove Hall was available "only" for "religious groups or groups that were allowed to come in" during the past "[t]hree to five years."  Kehoe was not asked whether individual rooms were available during tax year 2018.

10

At the conclusion of oral argument on December 21, 2020, both parties agreed the matter "c[ould] be disposed of by summary judgment," but Tax Court Presiding Judge Mala Sundar "ke[pt] the record open" in the event her review revealed disputed facts that required trial testimony. As reflected in her ensuing April 20, 2021 decision, however, the judge found the record evidence undisputed. Accordingly, the judge was persuaded that the parties' arguments concerning the application of the undisputed facts adduced in discovery fell short of demonstrating a genuine issue that would warrant a trial. The judge determined "the sole issue" for her consideration was whether Grove Hall "w[as] entitled to a tax exemption for the tax year 2018."

Judge Sundar squarely addressed the issues raised in view of the governing law. The judge found plaintiff was entitled to the exemption pursuant to the Paper Mill three-prong test both under the religious or charitable purposes clause, and the moral and mental improvement clause of N.J.S.A. 54:4-3.6.

As to the first prong, under the religious or charitable purposes clause, the judge rejected defendant's emphasis on the Association's lack of formal affiliation with, or control by, the United Methodist Church to buttress its conclusion that plaintiff's mission was non-religious and therefore not tax-exempt. Instead, the judge found "[n]one of plaintiff's employees or

11

representatives who were deposed disagreed with plaintiff's mission or expressed disagreement with the same vis-à-vis plaintiff's activities." Under the mental and moral improvement clause, the judge found the record evidence supported the conclusion that "[p]laintiff's object and purpose [were] to better people's spiritual well-being through worship, education, community awareness, and its annual summer tent camps." The judge therefore was satisfied plaintiff's mission satisfied the first Paper Mill prong.

Turning to the second prong, the judge found no evidence that any portion of Grove Hall was leased to a for-profit entity in violation of N.J.S.A. 54:4-3.6. Rather, the judge concluded the evidence confirmed Grove Hall's guests "almost all were non-profit entities, primarily religious" and any secular groups "were non-profits, such as educational institutions, women's groups, mental health groups, health-check groups, youth groups, and substance abuse groups." Citing N.J.S.A. 54:4-3.6, the judge found "a claim for tax exemption under this statute is not automatically jeopardized if the non-profit entity rents (imposes fees and charges for use and occupation of) its building which is actually used in its charitable, religious or benevolent work to other non-profit entities or for other tax-exempt activities." The judge rejected any "per se requirement that the users or occupiers of the building must only be religious."

The judge also was "unpersuaded that simply because plaintiff did not control the visitors' agendas, . . . Grove Hall was used for non-tax-exempt purposes." Citing the agenda of a women's retreat, "which included 'worship and prayer at Grove Hall' as Saturday night activities," the judge found the "agendas [we]re consistent with the plaintiff's goal of providing a space for worship, and Grove Hall's use [wa]s consistent with plaintiff's purpose of providing a 'seaside setting for a special time with God.'"

Referencing Kehoe's deposition testimony concerning individual night stays, the judge was satisfied the deponent also made it clear that such type of rentals occurred in the unspecified past, and "for the past three to five years, only groups could stay at the [property]." Acknowledging Grove Hall's guest list entries included two birthday celebrations and one family reunion, the judge was not convinced "plaintiff was operating Grove Hall akin to a commercially-run bed and breakfast." Generally citing the testimony of plaintiff's employees, the judge was satisfied that "such events would have to be faith-based."

Regarding the third prong, the judge concluded "[t]here was nothing provided to show that plaintiff diverted any portion of the income from Grove Hall for any for-profit or other non-tax-exempt activity." By contrast, the judge cited the Association's 2017 financial statements, which "show[ed] that all

13

incoming revenues, including gifts, donations, charitable contributions [we]re used to <u>meet</u> operating expenses, management expenses, wages/pensions, and funding of various endowments or specific funds." The judge also found the Association "certified that revenues from Grove Hall . . . [we]re used to support its several charitable endeavors many of which [we]re run (offered) for free, but which nonetheless incur[red] costs."

## III.

Although we generally defer to the Tax Court's expertise in our review of factual findings, we review de novo its decision on summary judgment, applying the same standard that governs the trial court. <u>See</u> <u>Christian Mission John 3:16</u>, 243 N.J. at 184. We review the record to determine whether there are material factual disputes and, if not, whether the undisputed facts viewed in the light most favorable to the non-moving party nonetheless entitle the movant to judgment as a matter of law. <u>Brill v. Guardian Life Ins. Co. of Am.</u>, 142 N.J. 520, 540 (1995); <u>see also</u> <u>R.</u> 4:46-2(c). We focus only on the motion record before the judge. <u>See</u> <u>Ji v. Palmer</u>, 333 N.J. Super. 451, 463-64 (App. Div. 2000). Summary judgment must be granted where the facts are so "one-sided that one party must prevail as a matter of law." <u>Brill</u>, 142 N.J. at 542 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986)). We owe no

deference to the court's legal analysis or interpretation of a statute. See Advance Housing, Inc. v. Twp. of Teaneck, 215 N.J. 549, 566 (2012).

On the same record presented to the Tax Court judge, defendant now contends "there may appear to be too many issues of material facts" that preclude judgment for plaintiff as a matter of law. While we recognize "[c]ross-motions for summary judgment do not preclude the existence of issues of fact," O'Keeffe v. Snyder, 83 N.J. 478, 487 (1980), there was no genuine issue of fact presented here.

Based on our de novo review of the record, we are satisfied – as was the Tax Court judge – that the parties' dispute was grounded in their interpretation of the record evidence, not the facts developed during discovery. As one notable example, Haney opined that Grove Hall did not meet his interpretation of a retreat center because the property lacked "structure," whereas the Association countered its lack of structure did not preclude a tax exemption.

Turning to the merits, the Township challenges the Tax Court judge's findings on all three prongs of the Paper Mill test. Reprising its arguments, defendant primarily contends: (1) plaintiff failed to demonstrate Grove Hall had any connection with its other properties and was not affiliated with "any church"; (2) Grove Hall was not used as retreat and convention center; and (3)

the purpose of the property was "purely commercial." In essence, the Township maintains Grove Hall was akin to a bed and breakfast inn, and as such, plaintiff was not entitled to a tax exemption.

Having considered all of defendant's contentions in view of the governing law, we conclude they lack sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E). We affirm substantially for the reasons expressed in Judge Sundar's published opinion, Ocean Grove Camp Meeting Ass'n of United Methodist Church v. Township. of Neptune, 32 N.J. Tax 320 (Tax 2021). Judge Sundar's findings are fully supported by substantial credible evidence in the record. Her legal conclusions are sound and consistent with applicable law. We add only the following brief remarks.

The lack of Grove Hall's structure did not demonstrate that the Association utilized the property as a bed and breakfast inn or for another non-tax-exempt purpose. As Judge Sundar found, the record was devoid of any "proof that the users/occupiers of Grove Hall were profit-making entities." The judge was persuaded that the undisputed record evinced "the secular groups who visited, stayed, and used Grove Hall were non-profit and/or religious entities." Although Kehoe acknowledged the property was "[n]o different than staying at a bed and breakfast or a hotel," there is no record evidence that the property was utilized

in that manner during the 2018 tax year. Instead, Kehoe testified that in the three to five years prior to her January 2020 deposition, Grove Hall was only open for religious and other qualifying groups. That time frame includes the 2018 tax year.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION