BIANCO, J.T.C.
This opinion constitutes the court’s decision after trial in the above-referenced matter. Plaintiff, the Borough of Hamburg (“the Borough”), appeals from the judgment of the Sussex County Board of Taxation (“the County Board”) granting property tax exemption to defendant, the Trustees of the Presbytery of Newton (“the Presbytery”) under the religious use provision of N.J.S.A. 54:4-3.6. The Presbytery is a tax-exempt religious organization formed under section 501(c)(3) of the Internal Revenue Code, and maintains a church building (“the Church”) and a Manse[1] located at Block 22, Lot 1, in the Borough of Hamburg (collectively “the Subject Property”). The Presbytery owns a number of other churches, all of which are held in trust for the Presbytery. Individual congregations do not own the church or property within which they operate.
In recent years, the use of the Subject Property has been in decline. Weekly worship services were held up until October 17, 2010, and the last time the Manse was occupied as living quarters was also in 2010. Water was shut off to the Subject Property in November 2011. The Subject Property has since been listed for sale.
On December 19, 2012 the Borough’s tax assessor issued a letter denying the Presbytery’s request for tax-exempt status of the Subject Property for tax year 2013. The Presbytery thereafter filed an appeal to the County Board, challenging the tax assessor’s denial of tax-exempt status. On June 17, 2013 the County Board granted tax-exempt status to the Subject Property, finding that the Presbytery satisfied the requirements of the religious use exemption pursuant to N.J.S.A. 54:4-3.6. The Borough timely appealed to this court.
For the reasons set forth in this opinion, the court affirms the County Board’s judgment granting tax-exempt status to the Subject Property pursuant to N.J.S.A. 54:4-3.6.
*315 Facts
After an audit in 2011, the tax assessor determined that the Subject Property’s tax-exempt status was deficient due to missing information. A letter was sent to the Presbytery on September 19, 2011 advising that the Initial Statement of Organization Claiming Property Tax Exemption was missing, and a Further Statement addressing any changes to the property was requested.
The Presbytery responded on October 31, 2011. In the Presbytery’s submission, Reverend Diane Curtis, the church clerk, stated that the “church is closed” and the “church and manse not used.” An undated letter was also provided to the tax assessor from Reverend Aaron Nagel, Ph.D., the recording secretary and trustee of the Presbytery as of 2010. Reverend Nagel wrote that the subject property “still remain[s] to be a vital part of the ongoing ministry of the Presbytery of Newton.” The letter also clarified the status of the Subject Property, explaining that, although the Further Statement indicated the Subject Property was “closed,” that designation was not meant to indicate the premises were no longer being used. He described the closing of the Church as “administrative in nature,” and he further stated that the Church remains “active and alive.”[2] At trial, Raymond W. Doidg, the Chairman of the Board of Trustees of the Presbytery, testified that the Subject Property has since been “repurposed.”
The last time the Manse was occupied as living quarters was in 2010. Since then, the sole use of the Manse has been for storage purposes. Specifically, the Manse was used to store records of baptisms, weddings, and funerals from the Presbytery at large and from the Church when it was operational. Records were kept in a small office located within the Manse, stored in “boxes and *316 shelves,” as well as the minister’s desk. The Manse continues to be used for storage purposes by the Presbytery.
Mr. Doidg also testified that the sanctuary was located on the second floor of the Church, which housed artefacts including the pulpit, organ, baptismal font, Bibles, church bell, religious garments, and hymnals. He stated that the Church is “ready to go, and it actually has been used in the last couple of months for ... prayer services.” He further testified that the Church “has always been available” for baptisms, weddings, or funerals, although none were performed in 2011, 2012, or 2013. Furthermore, artefacts stored in the Church were made available for use by other congregations within the Presbytery.[3]
Additionally, the Presbytery worked with The Foundation for Peace, a non-profit charity organized under section 501(e)(3) of the Internal Revenue Code (“the Foundation”). The Foundation originated from the national Presbytery in Washington, D.C. and later moved to the First Presbyterian Church in Morristown, N.J., and further expanded from there. Six or seven years ago, the Presbytery became an “integral partner” with the Foundation.
The Foundation stored goods at the Subject Property to be used in charitable mission work in South America. The goods were shipped approximately two to four times per year. These goods were stored in both the Church and the Manse at the Subject Property. Due to the availability of space, the Subject Property has become the “primary place” for the storage of goods by the Foundation, and it has been used “continuously” for this purpose. Goods were stored in the Church and “sometimes” in the Manse. The Foundation had its own key to “come and go” on its own.
*317 In his capacity as Trustee, Reverend Nagel recommended that the available space in the Subject Property be used for these storage purposes. He testified that the “actions and donations under the Foundation for Peace [are] in direct advancement of the cause of the Presbytery of Newton.” The mission of the Presbytery states in part that “[o]ur purpose is to provide relief of the poor, the distressed and the underprivileged, to advance religion and religious education, to maintain buildings for religious purposes, and to defend human and civil rights secured by law consistent with the IRS Internal Revenue Code for charitable organizations.”
Analysis
The burden of persuading the Tax Court that a tax exemption is merited is on the claimant “even when the county board has granted exemption and the appeal is by the municipality.” Woods Court v. Woodstown Bor., 12 N.J.Tax 197, 203 (Tax 1992). Accordingly, the burden is on the Presbytery to prove it qualifies for exemption, even though the Presbytery prevailed at the County Board.
Eligibility for tax exemption is governed by N.J.S.A. 54:4-3.6, which contains exemption for properties used for religious purposes, and states in pertinent part:
The following property shall be exempt from taxation under this chapter: ... all buildings actually used in the work of associations and corporations organized exclusively for religious purposes, including religious worship, or charitable purposes, provided that if any portion of a building used for that purpose is leased to a profit-making organization or is otherwise used for purposes which are not themselves exempt from taxation, that portion shall be subject to taxation and the remaining portion shall be exempt from taxation, and provided further that if any portion of a building is used for a different exempt use by an exempt entity, that portion shall also be exempt from taxation; ... the land whereon any of the buildings hereinbefore mentioned are erected, and which may be necessary for the fair enjoyment thereof, and which is devoted to the purposes above mentioned and to no other purpose and does not exceed five acres in extent; the furniture and personal property in said buildings if used in and devoted to the purposes above mentioned; ... provided, in case of all the foregoing, the buildings, or the lands on which they stand, or the associations, corporations or institutions using and occupying them as aforesaid, are not conducted for profit____
[N.J.S.A. 54:4-3.6.]
*318 Tax exemption statutes such as N.J.S.A. 54:4-3.6 are strictly construed against those claiming exemption. New Jersey Carpenters Apprentice Training & Educ. Fund. v. Borough of Kenilworth, 147 N.J. 171, 189, 685 A.2d 1309 (1996). All doubts are resolved against those seeking the benefit of a statutory exemption. Chester Borough v. World Challenge, 14 N.J.Tax 20, 27 (Tax 1994) (quoting Twp. of Teaneck v. Lutheran Bible Inst., 20 N.J. 86, 90, 118 A.2d 809 (1955))
The Supreme Court of New Jersey has set forth three criteria for whether a property qualifies for exemption under N.J.S.A. 54:4-3.6: (1) the owner of the property must be organized exclusively for the tax-exempt purpose, (2) the property must be actually[4] used for the exempt purpose, and (3) the operation and use of the property must not be conducted for profit. Paper Mill Playhouse v. Millburn Twp., 95 N.J. 503, 506, 472 A.2d 517 (1984). Each of these prongs is respectively referred to as (1) the “organization test,” (2) the “use test,” and (3) the “profit test.”
The Borough does not dispute that the Presbytery is organized exclusively for a tax-exempt purpose, nor does the Borough dispute that the operation of the subject property is not conducted for profit. Accordingly, only the second prong of Paper Mill is at issue here: whether the property is actually used for a tax-exempt purpose.
When determining whether a property is actually used for a tax-exempt purpose, the Tax Court evaluates whether the property is “reasonably necessary” for such tax-exempt purposes. Roman Catholic Archdiocese of Newark v. East Orange City, 18 N.J.Tax 649 (App.Div.2000) (citing City of Long Branch v. Monmouth Med. Ctr., 138 N.J.Super. 524, 532, 351 A.2d 756 (App. Div. 1976), aff'd, 73 N.J. 179, 373 A.2d 651 (1977)). When applying this test, the Court has held that “necessary” is not interpreted to *319 mean “absolutely indispensable.” Boys’ Club of Clifton, Inc. v. Twp. of Jefferson, 72 N.J. 389, 401, 371 A.2d 22 (1977).
Eligibility for exemption is determined as of October 1 of the prior tax year, which, in this case, is October 1, 2012. See Catholic Relief Services, U.S.C.C. v. South Brunswick Twp., 9 N.J.Tax 25, 27 (Tax), aff'd, 9 N.J.Tax 650 (App.Div.1987).
The Tax Court has previously held that “storage of documents and artifacts of a religious nature or related to the operation of the church should be deemed a religious purpose consistent with the exemption granted by the statute.” City of Long Branch v. Ohel Yaacob Congregation, 20 N.J.Tax 511, 527 (2003) (citing Roman Catholic Archdiocese of Newark v. East Orange City, 17 N.J.Tax 298, 314-315 (Tax 1998), aff'd, 18 N.J.Tax 649 (App.Div.2000)).
When interpreting N.J.S.A. 54:4-3.6, New Jersey courts have thus far declined to impose a minimum level of activity requirement on the use test. See Roman Catholic Archdiocese, supra, 17 N.J.Tax at 311 (but see contra N.J.S.A. 54:4-23.5 (requiring minimum gross sales of $500 per year as a condition to farmland assessment)). However, the “[e]omplete nonuse of property by a tax-exempt religious entity will not suffice to obtain a property tax exemption, even if future exempt use is contemplated or anticipated.” Id. at 305-306 (citing Holy Cross Precious Zion Glorious Church of God v. City of Trenton, 2 N.J.Tax 352 (Tax 1981); Rector, Wardens and Vestrymen of Christ Church v. Millburn Tp., 26 N.J. Misc. 123, 57 A.2d 506 (Div. Tax App. 1948)).
In Roman Catholic Archdiocese, the municipality challenged the tax-exempt status of two former parishes, contending that the properties were insufficiently used for religious purposes. The municipality argued that the Tax Court must examine the “quantum of use” of the property. Roman Catholic Archdiocese, supra, 17 N.J.Tax at 302.
On appeal, the Appellate Division characterized the Tax Court’s decision as follows:
The Tax Court conceived that the critical issue in the case was whether a minimum level of activity is required to obtain a tax exemption for property used for religious *320 worship or religious purpose. The Tax Court concluded that to measure the quantum of religious use of a completed building as a condition of granting a tax exemption would engage the courts in an improper evaluation of religious practice.
[Roman Catholic Archdiocese, supra, 18 N.J.Tax at 652 (citation omitted) (internal quotation marks omitted).]
In its decision affirming the Tax Court’s grant of tax exemption, the Appellate Division declined the Tax Court’s invitation to decide whether there is a minimum use requirement in N.J.S.A. 54:4-3.6: “[w]e conclude that the judgments upholding plaintiff’s tax exemption claims may be affirmed without reaching the question addressed by the Tax Court concerning the quantity of religious use of the churches.” Ibid. Instead, the Appellate Division chose to merely state that it was satisfied that the plaintiffs use of the property was “reasonably necessary” for the Archdiocese’ religious purposes, thereby meeting the actual use requirement of the use test.[5]
Here, the Borough contends that the ruling in Roman Catholic Archdiocese does not apply because the facts in that case are “strikingly different from the facts in the case sub judice.” This court is not persuaded.
There were two churches at issue in Roman Catholic Archdiocese. At Our Lady of the Most Blessed Sacrament, a weekly Mass was held and a Catholic youth basketball team used the parish’s gymnasium for practice and team meetings. At the other church, Our Lady of All Souls, a weekly mass was also offered, “deanery meetings”[6] were held, and religious artefacts and furnishings were stored for safekeeping. Roman Catholic Archdiocese, supra, 17 N.J.Tax at 302.
The Catholic youth basketball team only used the gymnasium “occasionally.” As for storage use, the Tax Court found that the *321 documents and artefacts “related either to the churches or were of a religious nature” and were thus “consistent with the religious purposes exemption.” Id. at 315.
The Masses at both parishes raised “the most difficult aspect.” Id. at 302. The Tax Court found that:
Testimony at trial and security log books maintained at each church clearly show that, usually, no more than two persons were present at each Mass: the pastor and the security guard for the church. The log books indicate that, occasionally, others did attend, but those days were few and far between. Although the doors to the churches were unlocked on the days Masses were said, no one could have known about the Masses unless they asked the pastors, or happened by the churches, since there was otherwise no advance notice to the public.

[Ibid.]

The Tax Court was nevertheless satisfied that the property was actually and exclusively used for religious purposes, and exemption was granted. The Appellate Division affirmed, stating:
We conclude that the use of the Blessed Sacrament and All Souls church properties for the storage of religious artefacts and records, meetings of priests from different parishes and Catholic Youth basketball was an integral part of the operations of the active parishes and thus ‘reasonably necessary’ for the Archdiocese’s religious purposes. Moreover, these religious uses of the properties were not merely de minimus[7] Indeed, the record indicates that a substantial quantity of religious artifacts are stored in both church buildings.
*322 [Roman Catholic Archdiocese, 18 N.J.Tax at 654.]
In attempting to distinguish Roman Catholic Archdiocese from the matter presented here, the Borough argues that “[t]he reference to the storage records, however, must be viewed in context. It was the combination of meetings of priests meetings [sic], CYO basketball and the storage of religious artefacts and records which drove the Court’s decision, not just the storage of records.”
The Borough further points out that, in Roman Catholic Archdiocese, “use of a church was at issue, not a manse.” Also, “[t]he court did not state the storage of those items alone constituted grounds for an exemption. In fact, there is no New Jersey case granting a manse exemption based solely on the storage of records, with nothing more.”
The Borough relies on City of Long Branch, supra, 20 N.J.Tax at 527, 528, where the Tax Court found that the storage use of a seasonal residence for visiting clergy was inadequate to establish exemption under the use test because there was no testimony as to the quantity of articles stored or whether other storage facilities were available. The Tax Court ultimately granted exemption, but did so on other religious use grounds based on other activities conducted on the premises.
There is a specific provision granting tax exemption for a parsonage in N.J.S.A. 54:4-3.6, which provides in pertinent part: “the buildings, not exceeding two, actually occupied as a parsonage by the officiating clergymen of any religious corporation of this State....” N.J.S.A. 54:4-3.6.
Here, the parsonage exemption is not available for the Manse because it was not occupied as living quarters during the time in *323 question. However, under N.J.S.A. 54:4-3.6, when the parsonage exemption is not otherwise met, “a residence not amounting to a parsonage may nevertheless be eligible for exemption as property used for religious purposes.” City of Long Branch, supra, 20 N.J.Tax at 523. Consequently, the exemption analysis for the Church and the Manse is the same: i.e., whether the Subject Property was actually used for religious purposes pursuant to N.J.S.A. 54:4-3.6.
The court finds that the testimony during trial adequately established that a substantial quantity of religious artefacts were stored in the Church. Based on the size and quantity of these artefacts, no reasonable storage alternative was available to the Church. Further, the use of the Church to store goods in connection with the Foundation for Peace is a valid charitable purpose that advances the religious mission of the Presbytery. Accordingly, the court concludes that the Church was reasonably necessary for the Presbytery’s religious purpose, and therefore satisfies the actual use requirement of the use test.
The Manse was used to store records from both the Church and the Presbytery. Additionally, the Foundation for Peace used the Manse for storage of its goods to be used in its charitable mission to South America. While the Church was the primary location for the storage of these items, and the Manse was only “sometimes” used for this purpose, the court is satisfied that the use of the Manse meets the standard articulated in Roman Catholic Archdiocese.
As for worship services, there is no requirement in N.J.S.A. 54:4-3.6 that worship services must be offered in order to qualify for exemption. After reviewing the evidence presented during trial regarding the use of the Subject Property, the court finds the Church and Manse were an “integral part of the operations of the active parishes” and therefore “reasonably necessary” for the Presbytery’s religious purpose. Roman Catholic Archdiocese, supra, 18 N.J.Tax at 654. The court finds that the Presbytery actually used the Subject Property for its religious purpose, thus satisfying the requirements for exemption under N.J.S.A. *324 54:4-3.6. The judgment of the County Board granting tax exemption to the Subject Property pursuant to N.J.S.A. 54:4-3.6 is therefore affirmed. The Tax Court Clerk/Administrator is directed to issue judgment in accordance with this opinion.

 The witnesses produced by the Presbytery at trial referred to the residence on the subject property that was formerly used as living quarters for its clergy as “the Manse."

 According to Rev. Nagel, when attendance was higher at the Church, the Presbytery granted the congregation "the right to elect its own board of directors with the authority to maintain their own membership rolls and apply for and utilize their own tax-exempt status as per federal and state regulations." Since the closing of the Subject Property, its operation has been returned to the Presbytery.

 For example, communion sets and sacramental sets may be transferred to other churches in the Presbytery depending on the size and need of the congregation. In fact, communion sets that were no longer being used on the Subject Property have already been transferred to a group in the Dominican Republic to be used during church services conducted in association with the Presbytery.

 N.J.S.A. 54:4-3.6 initially required the property to be actually and exclusively used for the tax-exempt purpose, but it was later amended to eliminate the exclusivity requirement. L. 1985, c. 395. Accordingly, it is now only required that the property be actually used for a tax-exempt purpose.

 The same issue — whether the Tax Court must examine the "quantum of use” of a property under the exemption requirements of N.J.S.A. 54:4-3.6 — is presented once again to the Tax Court in the present matter. However, based upon the ruling in Roman Catholic Archdiocese, the court need not address the issue. See Roman Catholic Archdiocese, supra, 18 N.J.Tax at 652.

 "[Meetings of priests from the different parishes convened to discuss matters of common interest.” Id. at 651.

 The Appellate Division engaged in a similar analysis in Hackensack City v. Bergen County, 405 N.J.Super. 235, 963 A.2d 1236 (App.Div.2009). In that case, Hackensack City challenged the tax-exempt status of property owned by Bergen County, contending that the storage function of the property was de minimus. Hackensack City argued that the property was not used for governmental purposes pursuant to N.J.S.A. 54:4-3.3 (the "public use” exemption) and therefore was not tax-exempt. There is a factual similarity between Hackensack City and the matter presented here. In Hackensack City, Bergen County owned the Arnold Constable Building, which was used as the County's principal administrative office. In 1988, the County’s offices relocated elsewhere, and the property was converted into a storage facility for surplus equipment, furniture, records, files, and food for distribution by non-profit agencies. Hackensack City, supra, 405 N.J.Super. at 240-241, 963 A.2d 1236. This function declined in 1997 and 1998 when Bergen County sought to sell the property, which provided the basis for Hackensack City’s challenge to the tax-exempt status of the property. Notwithstanding the factual similarity with the present matter, the Appellative Division’s holding in Hackensack City is less instructive than the decision in Roman Catholic Archdiocese because the standard for statutory construction of exemptions in favor of governmental agencies is much broader than for exemptions of private taxpayers. See Walter Reade, Inc. v. Twp. of Dennis, 36 N.J. 435, *322 440, 177 A.2d 752 (1962) (exemptions for government agencies should be "liberally construed”); see also City of Newark v. Essex County Bd. of Tax'n, 54 N.J. 171, 187, 254 A.2d 513 (1969) (citation omitted), cert. denied, 396 U.S. 987, 90 S.Ct. 483, 24 L.Ed.2d 452 (1969) (exemption must "expand when necessary"). Tax exemption statutes such as N.J.S.A. 54:4-3.6, on the other hand, are strictly construed against those claiming exemption. New Jersey Carpenters, supra, 147 N.J. at 189, 685 A.2d 1309. In any event, the Appellate Division determined in both Hackensack City and Roman Catholic Archdiocese that the taxpayers qualified for exemption under the facts.