**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE TAX COURT COMMITTEE OF OPINIONS**

**TAX COURT OF NEW JERSEY**



**KATHI F. FIAMINGO**
**JUDGE**

Olde Historic Courthouse
120 High Street
P.O. Box 6555
Mount Holly, New Jersey 08060
609 288-9500, Ext. 38303 Fax 609 288-9475

March 4, 2020

Jonathan M. Preziosi, Esq.
Pepper Hamilton LLP
301 Carnegie Center, Suite 400
Princeton, New Jersey 08543

Kathleen McGill Gaskill, Esq.
712 East Main Street, Suite 2A
P.O. Box 103
Moorestown, New Jersey 08057

> Re: Friends Academy of Westampton v.
> Township of Westampton
> Docket No. 006096-2017

Dear Counsel:

This letter constitutes the court's opinion with respect to plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained more fully below both motions are denied.

I. Procedural History and Findings of Fact

The court makes the following findings of fact based on the submissions of the parties as well as oral argument heard on October 22, 2019. The following facts are undisputed, unless noted otherwise.

Friends Academy of Westampton ("plaintiff") is a New Jersey nonprofit corporation organized pursuant to the New Jersey Nonprofit Corporation Act, N.J.S.A. 15A:1-1 et seq.






Plaintiff operated a non-profit Quaker school for preschool and middle aged children, located on approximately 11 acres of property known as Block 201, Lot 6, on the Tax Map of the Township of Westampton (the "subject property"). The improvements consisted of a preschool building, middle school building, gym building with a multi-purpose room, and a main school building that housed a lower school, library and administrative offices. Plaintiff provided education to preschool and middle-school aged children at the subject property commencing in September 2004. For the years it operated the school, plaintiff applied for and obtained an exemption from real property taxes under N.J.S.A. 54:4-3.6.

By the 2015-2016 school year the Board decided to close the school due to decreased enrollment, increased operating expenses, and mounting debt of more than $1.8 million. Classes at the property ceased as of June 2016. After the Board elected to close the school, a Board member instituted suit seeking to enjoin the closing.[1] Pending disposition of the subject property, records of the school and its former students, furnishings and equipment, including all classroom furniture and furnishings, remained in place at the subject property.

On August 20, 2016, defendant's tax assessor notified all owners of tax exempt properties in the municipality of a "tax exemption audit" and requested that each such owner, including plaintiff, submit a "Further Statement" on or before November 1, 2016. Notwithstanding such request, plaintiff failed to submit a Further Statement with respect to the subject property. On February 6, 2017, defendant's tax assessor notified plaintiff that its tax exemption was revoked due to the "failure to use and occupy the subject property for the intended purposes of the

---

[1] Plaintiff asserts that the lawsuit hampered its ability to successfully market and sell the subject property. Defendant disputes that a sale was hampered, noting that plaintiff listed the subject property for sale and entered into a contract for sale which did not include a contingency requiring the resolution of the lawsuit filed by the Board member. The subject property was sold to an unrelated third party in May 2017.

organization as of October 1, 2016 and . . . the failure to file the Further Statement by November 1, 2016." A Notice of Assessment was issued, assessing the subject property as follows for the 2017 tax year:

| | |
|---|---|
| Land: | $2,039,900 |
| Improvement: | $3,567,000 |
| Total: | $5,606,900 |

On July 31, 2017, plaintiff filed a complaint appealing the denial of tax-exempt status for the 2017 tax year. Defendant filed an answer on April 6, 2017. On August 26, 2019, both parties filed motions for summary judgment.

It is undisputed that there were no students enrolled and no classes taught during the year of 2017. Plaintiff contends that the subject property was being used for administrative offices, to assist students in transitioning to other schools by forwarding transcripts and other school-related records, and to assist displaced faculty and staff in obtaining new employment. In addition, plaintiff averred that the subject property was utilized to store and preserve school items and equipment, including desks, tables and chairs, audio-visual equipment and screens, computers, printers and server equipment, books and bookcases, phone and office equipment, the entire school library, classroom and laboratory equipment, globes, science atomic models, chalkboards and white boards, aquarium equipment, nurses office with scale and bed, gym mats and equipment, and other customary school equipment and supplies (hereinafter "school records, equipment, supplies, furniture and furnishings").

Defendant admits that the subject property was utilized for the storage of the school records, equipment, supplies, furniture, and furnishings. Defendant maintains that plaintiff's answers to interrogatories did not assert that the subject property was being utilized for administrative offices or to assist students in transitioning to other schools or to assist displaced

3

faculty and staff. Thus, defendant disputes such uses and asserts additional discovery is required as to such alleged uses.

At oral argument, plaintiff further argued that notwithstanding defendant's opposition based on the disputed facts, the storage of the school records, equipment, supplies, furniture and furnishings by itself was sufficient to qualify the subject property as exempt from tax. Plaintiff requested that the motion move forward on its motion for summary judgment with respect to the admitted facts, that is, the storage of school records, equipment, furniture and furnishings only. Defendant did not object to proceeding on plaintiff's motion for summary judgment with respect to those facts that were not in dispute and agreed that if the court found such uses were insufficient to support a finding in favor of plaintiff, that plaintiff preserved its right to argue that the alleged additional activities entitled it to exemption.

II.    Legal Issues and Analysis

   *A. Summary Judgment*

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact challenged and the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). In Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523 (1995), our Supreme Court established the standard for summary judgment as follows:

> [W]hen deciding a motion for summary judgment under Rule 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
>
> [Id. at 523.]

4

"The express import of the <u>Brill</u> decision was to 'encourage trial courts not to refrain from granting summary judgment when the proper circumstances present themselves.'" <u>Twp. of Howell v. Monmouth Cty. Bd. of Taxation</u>, 18 N.J. Tax 149, 153 (Tax 1999) (quoting <u>Brill</u>, 142 N.J. at 541).

> [T]he determination [of] whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
>
> [<u>Ibid.</u> (quoting <u>Brill</u>, 142 N.J. at 523.]

The movant bears the "burden to exclude any reasonable doubt as to the existence of any genuine issue of material fact" regarding the claims asserted. <u>Judson v. Peoples Bank and Trust Co.</u>, 17 N.J. 520, 529 (1954) (citation omitted).

As noted, plaintiff's alleged use of the subject property for the purposes of assisting students and staff in their search for new schools and employment, respectively, is in dispute. The parties do not dispute that the subject property was utilized for the storage of school records, equipment, supplies, furniture and furnishings. Plaintiff maintains that such storage qualifies the subject property for exemption. Defendant disagrees. At the request of the parties this motion is decided only as to the undisputed facts of the storage of school records, equipment, furniture, and furnishings.

### B. Property Tax Exemption

An exemption from taxation is a departure from the equitable principle that everyone should bear their just and equal share of the public burden of taxation. <u>Princeton Univ. Press v. Princeton</u>, 35 N.J. 209, 214 (1961); <u>Princeton Twp. v. Tenacre Foundation</u>, 69 N.J. Super. 559, 563 (App. Div. 1961). Taxation is the rule and exemption is the exception to the rule. <u>Princeton</u>

5

Univ. Press, 35 N.J. at 215. This rule reflects the well-established policy that "the public tax burden is to be borne fairly and equitably." Int'l Schools Servs. v. West Windsor Twp., 207 N.J. 3, 15 (2011). For that reason, an entity seeking a tax exemption has the burden of showing its entitlement to the exemption. Ibid. The legislative design to release one from his just proportion of the public burden should be expressed in clear and unequivocal terms. Bd. of Nat'l Missions, etc. v. Neeld, 9 N.J. 349, 353 (1952). Thus, the burden is upon the claimant to clearly bring himself within an exemption provision. Ibid.

In this matter, to establish its right to a property tax exemption, plaintiff must satisfy the requirements of N.J.S.A. 54:4-3.6, which provides an exemption for

> [A]ll buildings actually used for colleges, schools, academies or seminaries, provided that if any portion of such buildings are leased to profit-making organizations or otherwise used for purposes which are not themselves exempt from taxation, said portion shall be subject to taxation and the remaining portion only shall be exempt; . . . the land whereon any of the buildings hereinbefore mentioned are erected, and which may be necessary for the fair enjoyment thereof, and which is devoted to the purposes above mentioned and to no other purpose and does not exceed five acres in extent; the furniture and personal property in said buildings if used in and devoted to the purposes above mentioned; . . . provided, in case of all the foregoing, the buildings, or the lands on which they stand, or the associations, corporations or institutions using and occupying them as aforesaid, are not conducted for profit.
>
> [N.J.S.A. 54:4-3.6.]

The Supreme Court of New Jersey has interpreted the statute as requiring that the organization requesting exemption satisfy the following three-prong test: (1) it is organized exclusively for a charitable purpose (the "organization test"); (2) its property is actually used for such a charitable purpose (the "use test"); and (3) its use and operation of the property is not for profit (the "profit test"). Advance Housing, Inc. v. Teaneck Twp., 215 N.J. 549, 567-568 (2013);

6

see also Paper Mill Playhouse v. Millburn Twp., 95 N.J. 503, 506 (1984) (applying analogous three-pronged test to "moral and mental improvement" exemption of N.J.S.A. 54:4-3.6).

It is well-settled that property is assessable or exempt with reference only to its ownership and use on October 1 of the pretax year. Atlantic Cty. New School, Inc. v. City of Pleasantville, 2 N.J. Tax 192, 197 (1981); Emanuel Missionary Baptist Church v. City of Newark, 1 N.J. Tax 264, 266 (1980); Jabert Operating Corp. v. Newark, 16 N.J. Super. 505 (App. Div. 1951) ("it must be noted that the taxable or nontaxable status of property in this State relates to October 1 of the pretax year since it is the use of property on that date which determines whether the property is or is not exempt for the tax year"). In the present matter the parties do not dispute that plaintiff satisfied the organization test and the profit test. Where the parties disagree is whether the property was "actually used" for charitable purposes as of October 1, 2016.

It is "the use of the property, not the status or character of its owner" that is key in the exemption determination. Emanuel Missionary Baptist Church, 1 N.J. Tax at 268. "When determining whether a property is actually used for a tax-exempt purpose, the Tax Court evaluates whether the property is 'reasonably necessary' for such tax-exempt purposes." Bor. of Hamburg v. Trs. Of the Presbytery of Newton, 28 N.J. Tax 311,318 (Tax 2015). "When applying this test, the Court has held that 'necessary' is not interpreted to mean 'absolutely indispensable'" Id. 318-319 (citing Boys' Club of Clifton, Inc. v. Twp. of Jefferson, 72 N.J. 389, 401 (1977).

The parties agree that as of October 1, 2016, the subject property was no longer being utilized to conduct classes and that all of the school records, equipment, furniture and furnishings remained on site. Plaintiff argues that such storage use was reasonably necessary for its tax-exempt purpose, such that it is entitled to the statutory exemption from taxation.

7

Initially, plaintiff likens its use of the subject property to that of the plaintiff in Presbytery. There religious services were no longer conducted at the church property, but the building housed "artefacts, including the pulpit, organ, baptismal font, Bibles, church bell, religious garments, and hymnals." Id. at 316. Additionally, the plaintiff in Presbytery worked with another charitable foundation, the Foundation for Peace, which stored goods at the subject property to be used in charitable mission work. The court found that the use of the church property to store "a substantial quantity of religious artefacts" for which no reasonable storage alternative was available and "the use of the Church to store goods in connection with the [other charitable organization] [was] a valid charitable purpose that advance[d] the religious mission of the Presbytery." Id. at 323.

Plaintiff asserts that, similarly to the plaintiff in Presbytery, its storage of the school furniture, furniture, equipment and records is a valid charitable purpose which advances its mission as an exempt organization. Plaintiff does not provide any factual basis for its conclusion that the storage of the school records, equipment, furniture and furnishings constitutes an exempt use. Instead, plaintiff urges that the finding in Presbytery should be applied without further investigation. As noted above, the court in Presbytery did not conclude that the mere storage of personal property owned by the exempt organization constitutes a qualifying use, in and of itself. The court found, from the evidence presented to it, that "the Church . . . [was] an 'integral part of the operations of the active parishes' and therefore 'reasonably necessary' for the Presbytery's religious purpose." Ibid. (citing Roman Catholic Archdiocese of Newark v. East Orange City, 18 N.J. Tax 649, 654 (App. Div. 2000)). The court was further persuaded by the use of the church building to store goods belonging to the Foundation for Peace to be used in charitable mission work in South America. Id. at 316. The court found that this use of the church property was "a valid charitable purpose that advances the religious mission of the Presbytery." Id. at 323.

Plaintiff presents no similar evidence to demonstrate how the storage of the school records, equipment, furniture and furnishings advances plaintiff's mission as a school.[2] The court does not read Presbytery as approval for the mere storage of the exempt organization's assets as an exempt purpose in and of itself. An exempt organization must satisfy the requirements of the statute granting the exemption and must demonstrate how the storage furthers the exempt purpose of the organization. See Hamburg, 28 N.J. Tax at 318. Nothing provided by plaintiff demonstrates how the storage of assets of a now non-functioning school is integral to the operation of the school or was reasonably necessary for the conduct of the school or was "integral" to its charitable purpose.

Plaintiff argues that the storage of the school's property on the subject property was in furtherance of its charitable mission in that the "orderly dissolution and disposition of assets . . . are, by definition, necessary and integral to the charitable purpose of a non-profit corporation." Furthermore, plaintiff contends that it was required to maintain the property essential to the operation of a school by virtue of the lawsuit by one of its Board members which may have resulted in the requirement that the school reopen and teach classes. With respect to the latter argument, the defendant asserts that the contract under which the plaintiff sold the subject property did not include any contingency for the successful resolution of the lawsuit. However, it appears that plaintiff disputes that contention and neither plaintiff nor defendant has provided a copy of the contract for sale. Thus, the court finds that this fact is in dispute and will not rely upon it.

Plaintiff's argument that one of the requirements of a charitable organization is that it dispose of its assets in a qualifying manner, and thus constitutes an exempt purpose, has superficial

---

[2] Plaintiff's assertion that, in addition to being an "educational institution" it is also a "religious organization" and the facts underlying that assertion were not part of the statement of material facts upon which its motion was based. As a result, the court will not address such a contention.

9

appeal. Here, plaintiff argues that as long as it maintained the assets for disposition and ultimate sale, it was achieving a charitable goal. On closer inspection however, plaintiff's argument fails under its own weight. Brought to its logical conclusion, plaintiff's argument would elevate the mere storage of an exempt organization assets as an exempt use in and of itself. Nothing within the statute granting exemption permits such an interpretation. The provision of N.J.S.A. 54:4-3.3 under which plaintiff claims relief specifically provides that the buildings for which exemption is claimed be "actually used for . . . schools." Utilizing a building for the storage of items used in the conduct of a school is substantially different from actually using the building for a school.

To hold otherwise would unnecessarily and improperly expand the role and purpose of exemptions and pervert the basis for which exemptions are granted. "The underlying rationale for the exemptions is as a '*quid pro quo* for the performance of a service essentially public, and which the state thereby is relieved *pro tanto* from the necessity of performing . . . .'" Jersey Shore Med. Ctr. v. Neptune Twp., 14 N.J. Tax 49, 56 (1994) (quoting Carteret Academy v. State Bd. of Taxes, 102 N.J.L. 525, 528 (Sup. Ct. 1926), aff'd, 104 N.J.L. 165 (E. & A. 1927)). The mere storage of records or assets previously used, or to be used in the future, for the conduct of a school provides no public service or benefit to the state such that exemption is appropriate.

Plaintiff also cites Hackensack City v. Bergen Cty., 405 N.J. Super 235 (App. Div. 2009). There the County of Bergen owned real property which, prior to 1997, was utilized for county government purposes. In tax years 1997 and 1998, the use of the property was changed to storage of county equipment, furnishings, records and filed. The parking lot was used by various civic and non-profit organizations. Id. at 240-41. The taxing authority argued that the property was no longer "used for public purposes" as required by the applicable statute, N.J.S.A. 54:4-3.3. The appellate court affirmed the finding of the Tax Court that the usage of the property for the storage

of county owned property met the *public use* requirement for the purposes of the exemption statute applicable to governmental entities.

The exemption provided by N.J.S.A. 54:4-3.3 is not at issue here. Plaintiff's entitlement to exemption is determined under N.J.S.A. 54:4-3.6. There is a significant distinction between the two provisions. As noted by our Supreme Court, "[t]ax exemptions in favor of nongovernmental owners are strictly construed in the sense that an exemption will not be extended beyond the ascertainable intention of the Legislature. On the other hand, it has been held that exemptions in favor of governmental agencies should be liberally construed." Walter Reade, Inc. v. Dennis, 36 N.J. 435, 440 (1962) (internal citations omitted). Plaintiff is a nongovernmental owner. Plaintiff's entitlement to exemption is constrained by the requirement that the building be "actually used" for a school. As the court has explained above, the mere storage of materials in anticipation of a sale is not within the purview of "charitable use" as intended by the Legislature in the exemption statute applicable to plaintiff, N.J.S.A. 54:4-3.6.

III.     Conclusion

For the reasons set forth above plaintiff's motion for summary judgment is denied. As noted above due to the genuine issues of material fact present in this matter, defendant's motion for summary judgment is also denied.

Very truly yours,


Kathi F. Fiamingo, J.T.C.

11