**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1144-22

OPTIONS IMAGINED, a
New Jersey Nonprofit Corporation,

     Plaintiff-Respondent,

v.

PARSIPPANY-TROY HILLS
TOWNSHIP,

     Defendant-Appellant.

_____

Submitted February 27, 2024 – Decided April 17, 2024

Before Judges Mayer and Enright.

On appeal from the Tax Court of New Jersey, Docket Nos. 010456-2020, 009577-2021, and 007910-2022, whose opinion is reported at 33 N.J. Tax 129 (Tax 2022).

Inglesino, Wyciskala, Taylor, Grieco & Driscoll, LLC, attorneys for appellant (James L. Esposito, on the brief).

Respondent has not filed a brief.

PER CURIAM

In this one-sided appeal, defendant Parsippany-Troy Hills Township (Township) challenges an October 31, 2022 Tax Court order denying its motion for summary judgment and granting summary judgment to plaintiff Options Imagined, a NJ Nonprofit Corporation (Options), thereby allowing Options a charitable property tax exemption on its two-bedroom condominium unit (Subject Property) for tax years 2020 through 2022. We affirm, substantially for the reasons expressed by Judge Vito L. Bianco in his thoughtful and thorough published opinion. Options Imagined v. Parsippany-Troy Hills Twp., 33 N.J. Tax 129 (Tax 2022).

I.

We summarize the relevant facts from Judge Bianco's published opinion.

> Options is a nonprofit New Jersey corporation and a Federal 501(c)(3) organization created in 2015 by Joseph DeSimone to provide support services to adults with intellectual and developmental disabilities. Options is managed by its five-member Board of Trustees. . . . DeSimone serves as the President of the Board of Trustees.
>
> In furtherance of its charitable purposes, Options provides various New Jersey Department of Human Services, Division of Development Disabilities (DDD) recognized services[] to aid the moral and mental improvement of men, women, and children, as set forth

in N.J.S.A. 54:4-3.6.[1] Pursuant to Options' amended Certificate of Incorporation [(CI)], upon its dissolution, its assets will be distributed for tax exempt purposes within the meaning of Section 501(c)(3) or be distributed by federal, local, or state government for a public purpose.

The Subject Property is a residential two-bedroom condominium unit containing approximately 1,021 square feet of livable area; it was assessed for

---

1 N.J.S.A. 54:4-3.6 states, in part:

The following property shall be exempt from taxation . . . [:] all buildings actually used in the work of associations and corporations organized exclusively for the moral and mental improvement of men, women[,] and children, provided that if any portion of a building used for that purpose is . . . otherwise used for purposes which are not themselves exempt from taxation, that portion shall be subject to taxation and the remaining portion only shall be exempt;

[A]ll buildings actually used in the work of associations and corporations organized exclusively for . . . charitable purposes, provided that if any portion of a building used for that purpose is . . . otherwise used for purposes which are not themselves exempt from taxation, that portion shall be subject to taxation and the remaining portion shall be exempt from taxation . . . ;

[P]rovided, in case of all the foregoing, the buildings, or the lands on which they stand, or the associations, corporations[,] or institutions using and occupying them as aforesaid, are not conducted for profit . . . .

[N.J.S.A. 54:4-3.6.]

$150,000 for all years under appeal.[2] In September 2019, Options purchased the Subject Property from . . . DeSimone for $220,000. The entirety of the Subject Property is exclusively used for independent living and rehabilitative services.[3] Since Options purchased the Subject Property in 2019, . . . DeSimone's autistic adult son was the only resident and lessee of one of the bedrooms.[] However, it is anticipated that an additional DDD participant will occupy the second bedroom at the Subject Property once [the potential participant's] transition plans are complete.[4] . . .

Before Options acquired the Subject Property, the current resident lived alone at the Subject Property and received Section 8 subsidies.[] After the sale to Options, . . . DeSimone transferred the Section 8 housing contract to Options. Additionally, Options receives in-home and service funding from various sources[,] such as Medicaid Waiver Programs. . . . While the Subject Property itself is not yet approved by

---

[2] "The property tax for the Subject Property for the relevant years is as follows: $4,626.00 in 2020, $4,756.50 in 2021, $4,894.50 in 2022." Options Imagined, 33 N.J. Tax at 134 n.4.

[3] "The Subject Property has operated at a loss for the preceding three years." Ibid. at n.5.

[4] "The DDD's Planning for Adult Life Project assists students with intellectual and developmental disabilities and their families in transitioning into adulthood. Transition plans are created when a student moves from the school system into the adult service system. A transition plan identifies services that aids youth in achieving their ideal future life goals." Ibid. at n.7.

the DDD, the DDD has issued a Notice of Intent to License.[5]

Options, however, is approved and recognized by the DDD to provide services and support to adults with intellectual and developmental disabilities enrolled in various Medicaid Waiver programs. Options provides twenty-four-hour support services at the Subject Property to enable DDD participants to live in the community. The current resident is enrolled in [the Community Care Program (CCP)[6]] and receives funding through programs administered by the DDD.[7] The current resident is cared for fulltime by four trained Options individual support employees at the Subject Property as outlined in his approved New Jersey Individual Service Plan (ISP).[8] Individual support services are direct aid to individuals in achieving an independent lifestyle. These services include assistance in performing everyday tasks, such as the development of social skills and basic self-care.

---

[5]  "Once the Subject Property is licensed by DDD, funding will be received in the form of Supportive Housing Vouchers from the Supportive Housing Alliance." Id. at 135 n.10.

[6]  The CCP is a Medicaid waiver program whose "services are available to eligible adults with intellectual and developmental disabilities . . . living in licensed or unlicensed settings or with their families."

[7]  "The DDD developed and operates two Medicaid waiver programs:  (1) The Supports Program (SP) and (2) [t]he [CCP].  The CCP is a DDD initiative that permits New Jersey to receive a federal match on a variety of approved waiver programs and supports Medicaid beneficiaries to live in the community and avoid institutionalization." Ibid. at n.11.

[8]  "Each CCP participant must have an Individualized Service Plan (ISP) developed according to the standards specified in the CCP policy manual and the Support Coordination Orientation." Ibid. at n.12.

Options provides individual support services only to CCP participants in the Subject Property as well as other locations within twenty-one counties in New Jersey. The DDD listed Options as a Support Coordination (SC) agency, specifically as a released agency.[9] Support Coordination is a DDD funded service that assists DDD participants in gaining access to needed programs and State plan services.

[Id. at 133-36.]

Notably, Options' amended CI states, in part:

The [c]orporation is formed and shall be operated exclusively for the charitable, religious, educational, and scientific purposes of improving the lives of persons with intellectual and developmental disabilities by (i) providing services and support to persons with intellectual and developmental disabilities; . . . and (iii) conducting any other activities and performing any other acts which may be necessary or appropriate for the furtherance, accomplishment or attainment of the above-mentioned purposes. Notwithstanding any other provision contained in this [CI], the Corporation is organized and shall be operated exclusively for charitable, religious, educational[,] and scientific purposes within the meaning of Section 501(c)(3) of the Code and the purposes and powers of the Corporation are limited to the extent necessary to qualify the Corporation as an organization described in Section 501(c)(3) of the Code. In addition, the Corporation is organized exclusively for charitable purposes and for

---

[9] "Released agencies are agencies authorized to have their SC approve their own service plans because they met a minimum standard of delivering quality service plans. Therefore, released agencies do not have to submit service plans to the DDD for review and approval." Ibid. at n.13.

the moral and mental improvement of men, women[,] and children, as set forth in N.J.S.A. 54:4-3.6.

Beginning in 2019, and continuing into 2021, Options filed three applications for tax exempt status for tax years 2020, 2021, and 2022; the Township's Tax Assessor denied each application. Options timely appealed from these denials to the Morris County Board of Taxation; the Board denied each appeal.

Between September 2020 and June 2022, Options filed three complaints with the Tax Court of New Jersey, requesting a charitable tax exemption for the Subject Property for tax years 2020, 2021, and 2022. In March 2022, the Township filed a motion for summary judgment "to dismiss Options' appeals [from] the Morris County Tax Board's denial of the Subject Property's charitable property tax exemption for . . . the [tax] years at issue." Id. at 133. In July 2022, Options cross-moved for summary judgment, renewing its request for a property tax exemption for the three tax years at issue.[10]

---

[10] When the Township initially moved for summary judgment, it did so for tax years 2020 and 2021. Id. at 129, 132 n.1. After Options cross-moved for summary judgment, "[b]oth parties . . . confirmed [to Judge Bianco] that . . . consideration of . . . . [the cross-applications] should be for all years under appeal[,] as the material facts pertaining to all years [we]re the same." Ibid.

In August 2022, Judge Bianco heard argument on the parties' cross-applications and reserved decision. On October 31, 2022, he entered an order denying the Township's summary judgment motion and granting Options' cross-motion for summary judgment. The judge also directed the Township to "provide [Options] with a refund of all tax overpayments made for the 2020, 2021, and 2022 tax years, plus statutory interest."

In a written opinion accompanying the October 31 order, Judge Bianco found "Options [wa]s organized in furtherance of its [CI]," and thus, was entitled to charitable property tax exemptions for the tax years at issue. Id. at 133. In support of this determination, the judge referred to the three-prong test enunciated in Paper Mill Playhouse v. Millburn Township, 95 N.J. 503, 506 (1984) and Borough of Hamburg v. Trustees of Presbytery of Newton, 28 N.J. Tax 311, 318 (Tax 2015) regarding "whether a property qualifies for [a tax] exemption under N.J.S.A. 54:4-3.6."[11] Options Imagined, 33 N.J. Tax at 137.

---

[11]

> The Supreme Court of New Jersey has set forth three criteria for whether a property qualifies for exemption under N.J.S.A. 54:4-3.6: (1) the owner of the property must be organized exclusively for the tax-exempt purpose; (2) the property must be actually used for the exempt purpose; and (3) the operation and use of the property must not be conducted for profit.

After noting the parties agreed that only "the second prong of the Paper Mill [Playhouse] test" was at issue, "i.e., whether the Subject Property [wa]s actually used in furtherance of its organizational purpose," the judge observed that "the Township focused its argument on whether Options satisfied its charitable purpose by providing services to the public, given that . . . DeSimone's son was the only former and current resident of the Subject Property." Id. at 138.

Turning to the second prong of the Paper Mill Playhouse test, Judge Bianco found Options "satisfied all the requirements for [a] tax exemption" for the three years at issue because "[i]t [wa]s clear the Subject Property was used to provide the current resident with housing and DDD approved support services." Id. at 139. Judge Bianco also rejected the Township's argument "that because the Subject Property [wa]s not available to the public but rather, available only to the son of Options' President, Options d[id] not render a charitable benefit to the public." Ibid. The judge reasoned the Tax Court "previously recognized that property used to house and provide substantial supportive services that encourage an independent lifestyle me[t] the standard for [a] property tax exemption under N.J.S.A. 54:4-3.6." Ibid.

Additionally, Judge Bianco found:

> [Hamburg, 28 N.J. Tax at 318 (citing Paper Mill Playhouse, 95 N.J. at 506).]

The Subject Property is reasonably necessary and integral to the care and well-being of the current resident and provides him with the ability to lead an independent lifestyle within the community. The current resident receives assistance with community-based activities and aid in performing everyday tasks. Furthermore, Options is not limited to only housing . . . DeSimone's son. An additional DDD participant is anticipated to reside in the Subject Property and receive similar support services . . . . When . . . DeSimone's son is no longer a resident, the Subject Property will continue to be reasonably necessary and integral to the care of other DDD participants. Both bedrooms . . . can continue to be leased by DDD participants in need of housing and supportive aid. Accordingly, . . . Options . . . satisf[ies] the requirements of the use test.

[Id. at 139-140.]

Next, Judge Bianco found the Subject Property was used for a public purpose, even if not "open to the general public and utilized by more than one individual at any given time." Id. at 140. Further, he concluded "Options [wa]s absorbing some costs that the taxpayers would otherwise have to bear by caring for an individual with developmental disabilities." Id. at 141. Moreover, he found "Options offer[ed] housing and supportive services to individuals who might otherwise be institutionalized at a higher cost to the public[,] and provide[d] them with a safe setting in which to thrive." Ibid.

10

Finally, Judge Bianco rejected as "unfounded" the Township's argument that Options was not entitled to a charitable tax exemption because "Options was not created to provide residential services." Id. at 142. The judge noted:

> While Options' [CI] does not explicitly state that its creation is to provide residential services, it broadly outlines that [its] primary purpose is to provide services and support to persons with intellectual and developmental disabilities as well as conducting any other activity necessary in achieving its charitable purpose.
>
> The court is satisfied that the support services Options provides at the Subject Property are necessary in achieving its charitable purpose. The current resident, and potentially future residents, receive the daily supportive aid necessary to lead an independent lifestyle.
>
> [Id. at 142-43.]

II.

On appeal, the Township reprises many of the arguments it presented to Judge Bianco. It contends: (1) "Options . . . is not entitled to an exemption from local property tax under N.J.S.A. 54:4-3.6 because it does not satisfy the three-prong test applied to charitable organizations"; (2) "Options . . . does not actually use the Subject Property for any of the organization's enumerated charitable purposes and, therefore, does not satisfy the second prong of the Paper Mill Playhouse test"; (3) "owning [or] providing residential housing is not part

11

of[,] nor reasonably related to Options['] . . . charitable purpose"; (4) "housing should not be considered one of Options['] . . . charitable purposes[,] given [it] is not licensed to provide such services in the State of New Jersey"; (5) "there is no quid pro quo between Option[s'] . . . use of the [Subject Property] and any public provided service, which further undermines any contention that the [Subject Property] is actually used for a charitable purpose"; and (6) "the factual distinctions between recently published Tax Court decisions and the case at bar underscore the reasons why Options['] . . . use of the [Subject Property] cannot be considered charitable under N.J.S.A. 54:4-3.6." These arguments fail.

"An appellate court accords a highly deferential standard of review to [T]ax [C]ourt decisions." N.J. Tpk. Auth. v. Twp. of Monroe, 30 N.J. Tax 313, 318 (App. Div. 2017). We "will not disturb a [T]ax [C]ourt's findings 'unless they are plainly arbitrary or there is a lack of substantial evidence to support them' because '[t]he judges presiding in the Tax Court have special expertise.'" Ibid. (third alteration in original) (quoting Glenpointe Assocs. v. Teaneck, 241 N.J. Super. 37, 46 (App. Div. 1990)). However, we "review de novo a [T]ax [C]ourt's legal decisions." Ibid. (citing Toll Bros. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002)).

"'In New Jersey, all real property is subject to local property taxation . . . unless its use has been exempted' by legislation." Christian Mission John 3:16

v. Passaic City, 243 N.J. 175, 185 (2020) (omission in original) (quoting Hunterdon Med. Ctr. v. Twp. of Readington, 195 N.J. 549, 553 (2008)); see also N.J.S.A. 54:4-1. "Statutory exemptions from taxation should be 'strictly construed against those invoking the exemption.'" Advanced Hous., Inc. v. Twp. of Teaneck, 215 N.J. 549, 566 (2013) (quoting Hunterdon Med. Ctr., 195 N.J. at 569). Therefore, "an entity seeking a tax exemption has the burden of showing its entitlement to the exemption." Ibid. However, "this 'rule of strict construction must never be allowed to defeat the evident legislative design.'" Ibid. (quoting N.J. Carpenters Apprentice Training & Educ. Fund v. Borough of Kenilworth, 147 N.J. 171, 177-78 (1996)).

"Real property owned by a non-profit, charitable organization, which is used exclusively for charitable purposes—'as defined by law'—is specifically exempted from taxation under the New Jersey Constitution. The 'law' governing property tax exemptions is contained in N.J.S.A. 54:4-3.6." Id. at 566-67 (quoting N.J. Const. art. VIII, § 1, ¶ 2).

To qualify for a property tax exemption under N.J.S.A. 54:4-3.6, an entity seeking the exemption "must satisfy the statutory three-[prong] test that flows from N.J.S.A. 54:4-3.6," as set forth by the Supreme Court in Paper Mill Playhouse and its progeny. Id. at 567. The statutory exemption allowed under N.J.S.A. 54:4-3.6 is provided by the State as a "quid pro quo in recognition 'of

the contribution of the exempt facility to the public good.'" Christian Mission, 243 N.J. at 185 (quoting Roman Cath. Diocese of Newark v. Borough of Ho-Ho-Kus, 42 N.J. 556, 566 (1964)). The exemption is permitted even if such use "is available to or most immediately benefits only some narrow segment of the general public." Ibid.

"[W]hether property is devoted to charitable purposes depends upon the facts or circumstances of each case." Advanced Hous., Inc., 215 N.J. at 568 (quoting Presbyterian Homes of Synod v. Div. of Tax Appeals, 55 N.J. 275, 285 (1970)). "[A] sometimes stated justification for charitable tax exemptions is that if the charitable work were not being done by a private party, it would have to be undertaken at public expense." S. Jersey Fam. Med. Ctrs., Inc. v. City of Pleasantville, 351 N.J. Super. 262, 272 (App. Div. 2002) (quoting Presbyterian Homes, 55 N.J. at 285).

Next, it is well settled that although we generally defer to the Tax Court's expertise in our review of factual findings, we review de novo its decision on summary judgment, applying the same standard governing the trial court. Christian Mission, 243 N.J. at 184. Thus, we consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in

14

favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). "If there is no genuine issue of material fact, we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)).

Applying these principles, we perceive no basis to second-guess Judge Bianco's factual findings. Moreover, we are persuaded his legal conclusions are sound and consistent with applicable law. Accordingly, we affirm the October 31, 2022 order, substantially for the reasons expressed by the judge in his written opinion. We add the following brief remarks.

As already mentioned, the parties disputed only the second prong of the three-prong test enunciated in Paper Mill Playhouse, that is, whether the Subject Property was "actually. . . used for the tax exempt purpose." Paper Mill Playhouse, 95 N.J. at 506. A Tax Court addressing this prong "evaluates

whether the property is 'reasonably necessary' for such tax[]exempt purposes." Twp. of Green v. Life with Joy, Inc., 32 N.J. Tax 580, 594-95 (Tax 2022) (quoting Roman Cath. Archdiocese of Newark v. City of East Orange, 18 N.J. Tax 649, 653 (App. Div. 2000)). "When applying this test, the Court has held that 'necessary' is not interpreted to mean 'absolutely indispensable.'" Id. at 595 (quoting Boys' Club of Clifton, Inc. v. Twp. of Jefferson, 72 N.J. 389, 401 (1977)). Also, "the use test does not impose a quantum of use." Id. at 598.

Here, in addressing whether the Subject Property was actually used for a tax-exempt purpose, Judge Bianco noted that Options' trained staff provided a CCP participant (who "receive[d] funding through programs administered by the DDD") "twenty-four-hour support services at the Subject Property." Options Imagined, 33 N.J. at 135. Further, the judge found that Options' services "enable DDD participants to live in the community" and Options' "[i]ndividual support services are direct aid to individuals in achieving an independent lifestyle." Ibid. Moreover, the judge concluded that once "DeSimone's son [wa]s no longer a resident, the Subject Property w[ould] continue to be reasonably necessary and integral to the care of other DDD participants." Id. at 140. Additionally, Judge Bianco found that absent Options providing such comprehensive housing and services to its resident, as well as to future residents, the cost of such care would be shouldered by society, and likely at a significantly higher level. Id. at 141-

16

42. Under these circumstances, we reject the Township's argument that the judge erred in finding the Subject Property was "actually used in furtherance of Options' charitable purpose and . . . thus[,] exempt from taxation pursuant to N.J.S.A. 54:4-3.6 for the tax years at issue." Id. at 143. We therefore affirm the October 31, 2022 order for the reasons expressed in Judge Bianco's comprehensive written opinion.

To the extent we have not addressed the Township's remaining arguments, we conclude they lack sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION